Joseph A. Doran, J.
The petitioner charges the respondent with being the father of two children born to her out of wedlock as follows: Norma on July 22,1957, in Aiken, S. C., and Arthur on April 29,1962, in Morrisania Hospital, The Bronx, N. Y. The proceedings were commenced on February 7, 1964, by the filing *1080 of two petitions in this court — one with respect to each child — and were jointly tried in March, 1965.
The petition in each case alleges that the petitioner had sexual intercourse with the respondent on several occasions over a period of 14 years beginning with July 1, 1949, and ending, on June 1,1963. It may be noted that no bill of particulars appears to have been served in response to the respondent’s demand.
The said children have resided with the maternal grandmother in Aiken, S. 0. for some time — Norma since August, 1958, where she attends school under the surname of Bayne, and Arthur since August, 1963. The petitioner sends money to her mother for their support.
On December 22, 1940, the petitioner married one James Bayne, and had two children of this union in 1943 and 1948. There were several separations — according to the petitioner — in the course of the marriage. The petitioner and her husband separated in June, 1949 — a year after birth of their second child — and remained apart until May, 1958, when they went back together again. In the interval Norma was born as aforesaid. The resumption of married life between the petitioner and James Bayne continued until March 7,1959' — -so she says — when they separated once more. The birth of Arthur followed this separation by three years. The petitioner last .saw her husband only two or three months before trial at the home of a married daughter who lives in the same house. It is observed that the birth certificate for Arthur names James Bayne as father of the child. There is no explanation on the record. The petitioner, as appears, retains her married name.
On October 7, 1952, the petitioner “married” one Andrew Stone in a courthouse ceremony in Jacksonville, Florida. She was not divorced from James Bayne — -as the petitioner admits — and represented herself as single at the time. This relationship lasted until May, 1955, when the petitioner returned to her mother’s house in Aiken, S. 0. There she remained until November, 1957, and then came to New York City. The petitioner testified that she has not seen Andrew Stone since their separation, and there are no children of that relationship.
The petitioner went to school with the respondent in Aiken, S. C. Their sexual intimacy began in 1941 — so she testified — and ended in June, 1963. The first act of intercourse, therefore, took place following her marriage to James Bayne in December, 1940. It was repeated in 1944 — according to the petitioner— when the respondent was on “ furlough ” from military service. The petitioner further stated that she was seeing the respondent regularly after May, 1955. They occupied a room together at *1081 an address in Bronx County for some time in 1960 to January, 1961. It is also claimed that the respondent paid her rent from November, 1961 to February, 1962, during which time he used to visit the petitioner where she was then living, and the parties had sexual relations. When she informed the respondent of her pregnancies with the children involved in these proceedings, the petitioner says that he expressed the wish or hope on each occasion that it would be a boy. The respondent helped her' with money once in a while — so the petitioner asserts — and last gave her $20 in June, 1963, for the children.
The petitioner produced two witnesses — following a continuance of trial in these proceedings — who testified in the same vein that the respondent said to each of them on separate and unrelated occasions, respectively, “how do you like my son.” This kind of testimony is not unknown in this type of proceeding (see, e.g., People ex rel. Fischer v. Jones, 101 N. Y. S. 2d 317, 320). It need only be said that these witnesses were most unimpressive to the observing eye of the court and not deemed to be worthy of credence.
The respondent did not testify on his own behalf in this case (see Family Ct. Act, § 531), and such failure to testify creates no presumption against him (Matter of Fitzsimmons v. De Cicco, 44 Misc 2d 307, 310). He rested and moved .to dismiss the proceeding as to each child on the basis of the presumption of legitimacy — and also in respect to Norma as barred by the Statute of Limitations (see Family Ct. Act, § 517). It is possible, as was said in Matter of “ Doe ” v. “ Roe ” (40 Misc 2d 148, 150) to conceive of a state of facts in a filiation proceeding that could be successfully defended without testimony from the respondent. This — like People ex rel. Fischer v. Jones (supra) — is such a case.
The respondent may not be held to a paternal liability for support of the children involved in these proceedings unless the evidence is sufficient to create a genuine belief in the mind of the court that he is the father. (See Commissioner of Public Welfare of City of N. Y. v. Kotel, 256 App. Div. 352.) We have only the petitioner’s word that she was intimate with the respondent and no one else — not even her husband — at the time of conception of the said children. There is no corroboration in regard to any acts of intercourse. The testimony is most general and lacking in specifics as to details of time, place and circumstance. The petitioner may, of course, testify to non-access by her husband at all crucial times, which are five years apart for the two children in this case (Family Ct. Act, § 531). Such testimony will be carefully scrutinized and presents a ques *1082 tion of credibility of the witness. Needless to say, the petitioner is an interested witness. The trier of the facts need not accept her testimony at face value.
The presumption of legitimacy favors the children herein and is one of the strongest known to the law (see Matter of Findlay, 253 N. Y. 1). The question is whether the evidence is sufficient to rebut it (Moy Mee Soo v. Leong Yook Yick, 21 A D 2d 45). As already noted, the petitioner’s husband appears as father of Arthur on the birth certificate issued by the New York City Department of Health, and Norma also bears his name according to the mother. The court is not obliged to credit — and does not believe — the petitioner’s facile testimony that the husband was out of her life when she conceived the children involved in these proceedings. The marital relationship was resumed at least during part of the interval between births — as the petitioner admits — and her husband again reappeared at some time shortly before trial of this case. The ease with which he apparently came and went is highly suspicious and depends entirely on acceptance of the petitioner’s testimony. There was also Andrew Stone to fill part of the gap during other portions of the period of separation from original spouse. Then he too disappeared. The petitioner displayed a finesse worthy of a chess master by her convenient moves of these men at critical times — with each of whom she went through a ceremony of marriage as aforesaid — so as to leave the respondent standing alone to meet the charge of paternity in these proceedings.
The court finds the petitioner to be unworthy of belief and rejects her testimony purporting to establish nonaccess by her husband. She is obviously lacking in moral scruples and principle. Such a person cannot be expected to have much regard for the truth or the sanctity of an oath (Hyman v. Dworsky, 239 App. Div. 413, 418). The evidence was far from convincing to warrant a finding of paternity and orders of filiation against the respondent in the circumstances of this case. The consequences of such a determination are heavy and, therefore, impose a heavy burden of proof on the petitioner in this type of proceeding. The burden is only increased and becomes more difficult where, as here, the presumption of legitimacy favors the children of a married woman. It has not been sustained on this record so as to stigmatize these children with the stamp of illegitimacy.” The strong presumption to the contrary has not been weakened or overcome by clear and convincing proof or evidence that is entirely satisfactory as required in matters of this kind. (See Matter of Lane v. Eno, 277 App. Div. 324.)
*1083 If the court had not disposed of the matter on the merits with respect to Norma, it would be necessary in any event to dismiss the proceeding as to this child on the respondent’s motion as barred by the Statute of Limitations (Family Ct. Act, § 517). The commencement of such proceeding more than two years after the birth of the said child comes too late ‘ ‘ unless paternity has been acknowledged by the father in writing or by furnishing support ” (Family Ct. Act, § 517, subd. [a]). There has been no written acknowledgment by the respondent, and the court finds no credible proof that he furnished support for the child.
The petition in each proceeding aforesaid is dismissed against the respondent after trial on the merits.