Hugh R. Elwyn, J.
In tMs paternity suit brought by the Commissioner of Public Welfare, Clara Suto, the mother of the child, testified that she had been keeping company with the respondent for about two years prior to the baby’s birth during which time she and the respondent occupied adjoining houses. Bach was a frequent visitor in the other’s home and, although ostensibly they occupied separate apartments, it appears that for all practical purposes they were living together during much of this time. Then in April, 1963, a month before the baby was born, Mrs. Suto dropped all pretense and actually moved into the respondent’s house, which was right next door. On May 18, 1963, the baby was born.
The mother, Mrs. Clara Suto, is a married woman, but she testified that she had not lived with her husband for 14 years or more. This testimony was of course competent (Family Ct. Act, § 531). There is, however, recent authority suggesting *308 that the effect of the repeal of section 119 of the Domestic Relations Law defining a child born out of wedlock and the enactment of section 512 of the Family Court Act “ has apparently been to make it impossible for a woman to question the paternity of a child which was either begotten by or born to her while she was married ” (Matter of Kehn v. Mainella, 40 Misc 2d 55, 59). In the light of authority (Commissioner of Public Welfare v. Koehler (284 N. Y. 260) and People v. Arcieri (8 A D 2d 923) holding that a child born out of wedlock is one born “ out of lawful matrimony ’ ’ which means one ‘ born to an unmarried mother ” the court in Matter of Kehn v. Mainella (supra, p. 58) felt constrained to conclude that because section 512 of the Family Court Act now defines a “ child born out of wedlock ” as “ a child who is begotten and born out of lawful matrimony ’ ’ and has omitted all reference to a married mother separate from her husband (cf. Domestic Relations Law, § 119, subd. 1, par. [b], prior to repeal) that the phrase “ out of lawful matrimony ” refers only to an unmarried mother. But does the elimination of the category contained in paragraph (b) of subdivision 1 of section 119 of the Domestic Relations Law prior to its repeal from the definition of a “ child born out of wedlock ’ ’ as contained in section 512 of the Family Court Act really have this effect?
I am convinced that it does not. Such a construction of the statute certainly does not agree with the layman’s definition of a child born out of wedlock as “ a child whose father is not the mother’s husband ’ ’ and it is not in accord with the realities of life as seen every day in the tragedies of the broken homes - which are the daily grist for the Family Court mill. Nor is such a construction of section 512 of the Family Court Act in accord with authority.
In Commissioner of Public Welfare v. Koehler (284 N. Y. 260, 264-265, supra) the Court of Appeals said: “A natural child ’ or a ‘ child born out of wedlock ’ or a ‘ bastard ’ as defined by the statutes is in effect a child born ‘ out of lawful matrimony ’ or born to a married woman under conditions where, as stated in Matter of Findlay [253 N. Y. 1], the presumption of legitimacy is not conclusive and has been rebutted. The statutory reference to a child born while the husband of its mother was ‘ separate ’ from her for a whole year means, it is plain, while husband and wife were living apart under conditions where there is no ‘ fair basis for the belief that they may have come together. ’ There is sufficient proof of that in this case and, when the court so found, it had jurisdiction to make the order appealed from.”
*309 I conclude, therefore, that the only effect of the elimination of that part of the definition of a “ child born out of wedlock ” of the phraseology contained in former paragraph (b) of subdivision 1 of section 119 of the Domestic Relations Law from the definition of a “child born out of wedlock ” as contained in section 512 of the Family Court Act is to restore the rules and conditions under which the presumption of legitimacy may bo rebutted as stated in Matter of Findlay (253 N. Y. 1) without the former statutory necessity for the husband to be separate from the mother for a whole year previous to its birth before the presumption of legitimacy could be overcome.
In other words, while in the case of a child born to a married mother the presumption of legitimacy still exists, and that presumption is “ one of the strongest and most persuasive known to the law ” (Matter of Findlay, supra, p. 7), illegitimacy may be proved if the husband and Avife are living apart under conditions where there is no “ fair basis for the belief that at times they may have come together ” (Matter of Findlay, supra, p. 8). Whether the presumption of legitimacy is rebutted is now solely a question of fact in each case; legitimacy is no longer conclusively presumed in all cases where the husband has not been separate from the mother for a whole year prior to the child’s birth. WAile the evidence to rebut the presumption of legitimacy may have to be stronger where the husband’s absence has been less than a year than if his absence has been longer, the presumption is still rebuttable and not conclusive.
As was said by the Court of Appeals in Matter of Findlay (supra, p. 8): “Whether such a basis [for the belief that at times the spouses may have come together] exists in any given instance is to be determined, however, in the light of experience and reason. The presumption does not consecrate as truth the extravagantly improbable, which may be one, for ends juridical, with the indubitably false ”.
Here the mother of the child, although married, has not lived with her husband in over 14 years. There is no suggestion in the testimony that at any time within the period of gestation of this child that the mother and her husband may have come together. Under such circumstances “ common sense and reason are outraged by a holding that [the presumption of legitimacy] abides ”. (Matter of Findlay, supra, p. 8.) The child in this case, though born to a married woman, must, under the circumstances revealed here, be held to be a “ child born out of Avedlock ’ ’.
During the five days that Mrs. Suto Avas confined to the Benedictine Hospital following the delivery of the baby, the *310 respondent was a frequent visitor, both morning and night, and sometimes in the afternoon. On May 20, 1963, in the presence of a registered nurse, the respondent signed a written statement reading: “ this is to certify that I, John DeCicco, am the Natural Father of Baby Boy Vincent Bussell DeCicco born to Clara Irene Boughton Suto at 4:40 p.m. on May 18, 1963 and hereby give permission for my name to appear as the Natural Father of said child for registration of same.” Accordingly, the baby was named Vincent Bussell De Cicco and the certificate of birth registration certifying that a birth certificate has been filed for Vincent Bussell De Cicco born May 18,1963 lists John De Cicco, the respondent, as the child’s father.
The respondent did not testify (Family Ct. Act, § 531) and his failure to testify does not create any presumption against him (People ex rel. Fischer v. Jones, 101 N. Y. S. 2d 317, 320). However, this leaves uncontradicted the respondent’s acknowledgment of paternity made at a time when there was no motive to falsify standing in sharp contrast to his silence when sued by the Commissioner of Public Welfare to establish paternity and financial responsibility for the child. Moreover, the respondent’s attempt to cast doubt upon the mother’s moral character by showing her participation in an isolated instance of drunkenness and late-hour revelry with an unknown male is simply not sufficient in the face of her denials of any impropriety and the respondent’s admission of paternity to weaken seriously the Commissioner’s case.
A filiation proceeding is civil in nature (Matter of Clausi, 296 N. Y. 354; Scruton v. Dziewisz, 284 App. Div. 276; People v. Guley, 281 App. Div. 927; People v. Bowers, 9 Misc 2d 873) and the allegations of the petition need not be established beyond a reasonable doubt (Commissioner of Public Welfare ex rel. McNamee v. Ryan, 238 App. Div. 607). The testimony must, however, be ‘ ‘ entirely satisfactory ’ ’ which has been construed to mean a quantum of proof greater than a mere preponderance, but less than beyond a reasonable doubt. “ [T]he phrase * entirely satisfactory ’ does not require proof of a claim beyond a reasonable doubt but does require evidence sufficient to create a genuine belief in the mind of the trier of the facts that the defendant is the father of the child”. (Commissioner of Public Welfare ex rel. McNamee v. Ryan, supra, p. 608.)
I am persuaded that the respondent is the father of this child which has been since its birth a public charge. The order of filiation declaring paternity shall direct the respondent to pay to the Ulster County Welfare Commissioner as trustee (a) the *311 sum of $12 per week for the support and education of the child until the child is 21; (b) the sum of $30.12 per month for the amount expended by the Ulster County Welfare Department for food, clothing and shelter costs for said child from the date of the child’s birth to the date of the entry of an order hereon, amounting to the sum of $481.92, which said sum may be paid at the rate of $30.12 per month; (c) the sum of $84.28 advanced by the Ulster County Welfare Department for medical expenses for the child, which said sum may be paid at the rate of $5 per month, and (d) the sum of $302.67 for the necessary expenses incurred by the Ulster County Welfare Department in connection with the mother’s confinement and recovery, which said sum may be paid at the rate of $20 per month.