NAOMI L. ESTEY *v.* NORMAN MAWDSLEY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-655-16644

Argued November 29, 1965—decided January 7, 1966

*William B. Collins,* of Manchester, for the appellant (defendant).

*Francis J. MacGregor,* assistant attorney general, for the appellee (plaintiff).

KINMONTH, J. This action was brought under § 52-435 of the General Statutes.[1] The issues were

---

[1] "Sec. 52-435. BASTARDY COMPLAINT BY MOTHER. Any woman pregnant with or who has been delivered of a child out of lawful wedlock . . . ."

found for the plaintiff, and the defendant has appealed, assigning error in the court's finding and in its conclusion that a married woman could maintain a cause of action under the statute. The defendant abandoned his attack on the finding, and the only question before us is whether a married woman can maintain a cause of action under the statute in effect when this action was commenced.

The facts essential to the question before us may be briefly stated as follows: The plaintiff separated from her husband in July, 1962, and thereafter had no relations with him. From June of 1962 until April or May of 1963, the plaintiff and the defendant engaged in sexual relations. On September 13, 1963, the plaintiff gave birth to a child and was subsequently divorced by her husband.

Notwithstanding the language of the statute, the defendant contends that there was no intention of the legislature to permit the mother of a child conceived and born during the time when she was married to assert and prove that the child was conceived and born out of wedlock. The defendant maintains that under this statute only an unmarried woman could bring the action and that this interpretation is further substantiated by the legislative action in repealing § 52-435 and enacting No. 406 of the Public Acts of 1965.[2] It is conceded that this act is not retroactive so as to affect the present proceedings.

Our so-called bastardy statutes from the inception have allowed "any woman" to maintain an action. Section 6006 of the Revision of 1918 was amended in 1927; Public Acts 1927, c. 244, § 1; and appears

---

[2] "Proceedings to establish paternity of a child born out of lawful wedlock, including one born to a married woman but begotten by a man other than her husband, shall be instituted by a verified petition of the mother . . . ." Public Acts 1965, No. 406, § 1; see § 8.

as § 5867 of the Revision of 1930, which maintained the phrase "any woman" and added "or who has been delivered of a child out of lawful wedlock," leaving out the word "bastard." The only significant difference in the law is that prior to the amendment of 1927 children born under the circumstances under consideration were denominated "bastards," whereas since that time they have been denominated "children born out of lawful wedlock." The word "bastard" in our language, both in its legal signification and in its literal use, has a well-defined meaning; Ballentine, Law Dictionary, defines it as a "person . . . begotten of adulterous intercourse." The word is also defined as a "child whose parents were not married to each other at the time of its birth." *Campion* v. *Lattimer,* 70 Neb. 245, 248; *Gomez* v. *State ex rel. Larez,* 157 Neb. 738, 742. Ballentine defines a child "born out of wedlock" as a child born to a married woman, but begotten during the continuance of the marriage status by one other than her husband. See note, 156 A.L.R. 1411.

Had the legislature intended that the statue should apply to only single or unmarried women, it would have been simple for it to use those words, as has been done in several states. Where the statute uses the words "any woman," it has been construed to permit married women to prosecute. *Evans* v. *State ex rel. Freeman,* 165 Ind. 369; *State ex rel. Reynolds* v. *Flynn,* 180 Wis. 556. And it has been held that the mother of a "child born out of wedlock" within the meaning of bastardy statutes may be at the time of conception and birth of the child a married woman. 7 Am. Jur. 682, Bastards, § 83.

The words of a legislative enactment are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning is intended. *Southern New England Telephone Co.*

v. *Public Utilities Commission,* 144 Conn. 516, 522;
*State ex rel. Higgins* v. *Civil Service Commission,*
139 Conn. 102, 114. The word "any" defining the
noun "woman" in our statute clearly does not qualify
or restrict her as to marital state. It is in fact a
broad and all-encompassing adjective.[3] If, there-
fore, the literal language of the statute is to be ac-
cepted as expressing the true intention of the legisla-
ture, it must be said that the bastardy proceedings
provided by the statute were available to the plain-
tiff. As to Public Acts 1965, No. 406, it merely clari-
fies the prior statute and must be accepted as the
legislative declaration of the meaning of the original
act. *Hartford* v. *Suffield,* 137 Conn. 341, 346.

While the presumption of legitimacy with respect
to children conceived and born in lawful wedlock
should not be lightly thrown aside, such a presump-
tion should not be permitted to relieve wrongdoers
from their full legal obligation to support their
illegitimate children, when a reasonable construc-
tion of the statute will permit such a result. *State
ex rel. Sprungle* v. *Bard,* 59 Ohio L. Abs. 129; *Beal*
v. *Ross,* 11 Conn. Sup. 323, 326.

There is no error.

In this opinion KOSICKI and LEVINE, Js., concurred.

---

[3] We have not overlooked Form No. 810 of the Practice Book.
Public Acts 1965, No. 406, effective July 1, 1965, completely changed
the procedure in paternity actions. It provides for the institution
of such actions by verified petition, order and summons, in a form
approved by the judges of the Circuit Court. The petition, order
and summons which were approved appear in 27 Conn. L.J., No. 1,
p. 9 (July 6, 1965). See Practice Book, p. 32 (Sup. 1966). This
form has provisions for suit by a married woman.