Hugh R. Elwyn, J.
In this filiation proceeding the petitioner, a married woman, seeks to establish the respondent’s paternity of a female child born to her on August 2, 1966 while she was still living in a conjugal relationship with her husband. The petitioner who was married to her husband on September 16, 1957 bore him a daughter on June 4, 1962 and continued to reside with her husband in the same household until April, 1967, approximately eight months after the birth of her second child of whom the respondent is alleged to be the father.
The petitioner’s testimony shows that some time during the year 1962, shortly after the birth of her first child, she became intimate with the respondent, her employer, and that during the next four years until December, 1966 when the respondent laid her off that she and the respondent indulged in regular sexual relations, three or more times a week without ever having taken any precautions to prevent conception. The petitioner further testified that she loved the respondent, that the child was a love child, that the respondent had asked her to have a child by him and that she had deliberately and willingly borne his child.
According to the petitioner, the respondent admitted to her on many occasions that he was the father of the child and the respondent’s solicitude for the petitioner’s and the baby’s welfare is certainly consistent with a belief on his part that he is the father of the child. For instance, the petitioner’s proof shows that the respondent paid the balance of a hospital bill amounting to $56 for the delivery of the child; that on an occasion when she and the respondent consulted a physician for treatment of the baby, the respondent in response to the doctor’s comment ‘1 you have a nice little girl there ’ ’ replied ‘ ‘ I sure have ’ ’ or words to that effect and then instructed the doctor to send the bill to him and that after the birth of the baby and during the pendency of this proceeding he supplied the petitioner with a Uni-card family service credit card in his name, which the petitioner, used to purchase clothing for the baby.
The respondent’s solicitude and perhaps even love for the petitioner is also shown by the fact that on July 21, 1965 he bought her a 1965 Plymouth Barracuda automobile, making the down payment and financing the balance with payments made by Stix’ Inc.; after the institution of this proceeding supplied her with a Mobil credit card issued in his name and which she used to purchase gasoline; in February, 1967 after the petitioner bad left the respondent’s employ wrote her a love letter declaring his love for her and alluding lustfully *942 to his pleasure in her charms, and in April, 1967, when the petitioner left her husband, purchased furniture for her and made a down payment of $500 on a trailer into which she and her two children moved and which she shared along with her bed with the respondent for three weeks in April and May of 1967.
All of these acts of the respondent serve but to confirm the petitioner’s claim to an illicit love affair and .strongly suggest the respondent’s belief that he is the father of the child. However, the most damning piece of evidence pointing to the respondent as the father of the child is a photograph taken approximately two weeks after the baby’s birth showing the respondent holding the baby and bearing on the reverse side the date, August, 1966 and the inscription “ Baby ‘ Beth ’ and Daddy ”. Nevertheless, the respondent did not choose to testify (Family Ct. Act, § 531) and his failure to do so does not create any presumption against him (Matter of Fitzsimmons v. De Cicco, 44 Misc 2d 307, 310).
From the testimony adduced on behalf of the petitioner it is abundantly clear that for more than four years she carried on a passionate illicit love affair with the respondent and that he, although he now denies paternity, had ample reason to believe that he might have been the cause of her pregnancy and the father of her child. However, in the case of a married woman proof of an adulterous relationship is insufficient to establish paternity unless by equally clear, convincing and entirely satisfactory proof she negates access by her husband (Matter of Black v. Brown, 27 A D 2d 683; People v. Lewis, 25 AD 2d 567).
The petitioner, being a married woman carries a heavy burden of proof, for it is presumed “ that a child born of a married woman is the child of her husband where the latter is potent and access is established ” (Moy Mee Soo v. Leong Took Tick, 21 A D 2d 45, 47) and this presumption of legitimacy is “ one of the strongest and most persuasive known to the law ” (Matter of Findlay, 253 N. Y. 1, 7; Commissioner of Public Welfare v. Koehler, 284 N. Y. 260). Indeed, as Chief Judge Cakdozo said in Findlay, p. 8: “If husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer ’ ’.
Prior to September 1, 1962 this petitioner who was never separated from her husband from the date of her marriage until eight months after the birth of the child could not have maintained this proceeding at all for in the case of a child born to a married woman 11 a child born out of wedlock ’ ’ was then *943 defined as “a child begotten and born: 8 8 8 (b) while the husband of its mother was separate from her a whole year previous to its birth.” (Domestic Relations Law, former § 119, subd. 1, par. (b), repealed by L. 1962, ch. 690, § 5). And it was immaterial whether the parties to the marriage testified that there was no intercourse between them during the period they were not separated, it being public policy not to treat such a child as one born out of wedlock (Lovelace v. Arcieri, 17 A D 2d 465).
Even after the enactment of section 512 of the Family Court Act which replaced former section 119 of the Domestic Relations Law with a new definition of the phrase ‘ ‘ child born out of wedlock ” as “a child who is begotten and born out of lawful matrimony” there remained some doubt as to the right of a married woman to claim anyone but her husband as the father of her child. By applying the same rules of construction to the language of subdivision (a) of section 512 of the Family Court Act as have been applied to section 119 (subd. 1, par. [b]) of the former Domestic Relations Law the Family Court of Rensselaer County in Matter of Kehn v. Mainella (40 Misc 2d 55, 59) concluded that “the effect, therefore, of section 512 of the Family Court Act has apparently been to make it impossible for a woman to question the paternity of a child which was either begotten by or born to her while she was married ”.
This result has not, however, been followed by other Family Courts which have had occasion to consider what change, if any, has been wrought by the new definition of a “ child born out of wedlock” contained in subdivision (a) of section 512 of the Family Court Act. In Matter of “ Anonymous ” v. “Anonymous ” (43 Misc 2d 1050) the Family Court of Albany County held that a married woman could assert that a man other than her husband was the father of her child. (See, also, Matter of Oliver v. England, 48 Misc 2d 335 [Family Ct., Monroe County].)
In Matter of Fitzsimmons v. De Cicco (44 Misc 2d 307, 309, supra) this court “ concluded [ed] * that the only effect of the elimination of that part of the definition of a ‘ child born out of wedlock ’ of the phraseology contained in former paragraph (b) of subdivision of section 119 of the Domestic Relations Law from the definition of a 1 child born out of wedlock ’ as contained in section 512 of the Family Court Act is to restore the rules and conditions under which the presumption of legitimacy may be rebutted as stated in Matter of Findlay (253 N. Y. 1) without the former statutory necessity for the *944 husband to be separate from the mother for a whole year previous to its birth before the presumption of legitimacy could be overcome. * * * Whether the presumption of legitimacy is rebutted is now solely a question of fact in each case; legitimacy is no longer conclusively presumed in all cases where the husband has not been separate from the mother for a whole year prior to the child’s birth.”
To rebut the presumption of legitimacy which attaches to the birth of her second child while still residing with her husband both the petitioner and her husband testified to the complete absence of any sexual relations after the husband suffered an auto accident in the year 1963 (Family Ct. Act, § 531; Moy Mee Soo v. Leong Yook Yick, 21 A D 2d 45, 46, 47, supra), although the petitioner admitted that prior to 1963 she and her husband had sexual relations once a month. The reasons for the abrupt and total termination of all sexual relations between husband and wife were never satisfactorily explained, although if the testimony is to be credited it would appear that the husband’s sudden and permanent loss of all sexual desires and prowess coincided with and was matched by his wife’s satiety from her love affair with the respondent.
It is not claimed and there is absolutely nothing in the petitioner’s proof to show that her husband was either sterile (see “Houston” v. “Houston”, 199 Misc. 469) or impotent (see People v. Lewis, 25 A D 2d 567, supra), nor was he excluded from being the father of her child by the results of blood grouping tests as was the husband in Platter of Oliver v. England (48 Misc 2d 335, supra) and where under similar circumstances the respondent was found to be the father of a married woman’s child. The evidence offered to rebut the presumption of legitimacy consists solely of the testimony of the petitioner and her husband to the total absence of any connection over a four-year period, although during all of this time they occupied the same abode.
Moreover, not only were the petitioner and her husband residing in the same dwelling at the time of conception, gestation and birth, but it further appears from the testimony of the husband that even while this proceeding was pending in this court and during an adjournment of the trial, the husband flew to Florida to join his wife, while there slept in the same room with her for a week or more and shared the same motel rooms with her on the return trip by car. Thus the petitioner’s and her husband’s testimony as to nonaccess daring the crucial period when conception must have occurred has to be evaluated in the light of the fact that even during the pendency of the *945 trial of this case, at least for the duration of the Florida trip, the conjugal relationship appeared to continue.
A glaring omission in the proof in this ease is the failure of either party to introduce into evidence the child’s birth certificate, or to elicit from the petitioner any testimony as to whom she named to the authorities as the father of her child. However, inasmuch as the petitioner is a married woman it is reasonable to assume that the child’s birth certificate bears the name of her husband as the father of her child, for the name of the respondent as the putative father of the child as one born out of wedlock could not have been entered on the certificate of birth without his consent in writing, duly verified by him and filed with the record of birth (Public Health Law, § 4135, subd. 2). No proof was offered that the respondent ever gave such consent. Also consistent with the presumption of legitimacy is the fact that after the child’s birth and until immediately prior to the commencement of this proceeding the husband had on file with his employer a withholding tax exemption form claiming the child as an exemption for income tax purposes.
In sum, the petitioner’s proof of her shameless illicit love affair with the respondent is sufficiently clear and convincing to brand her as an adulteress, the respondent as a debaucher of her marriage and the husband as a pitiable cuckold, but it falls short of being entirely satisfactory to rebut the presumption of legitimacy where the husband is potent and access is established. When a husband and wife are occupying the same dwelling and are living together in the conjugal relationship, the testimony of either or both as to the absence of any sexual relations between them is viewed by the courts with much skepticism (see Lovelace v. Arcieri, 17 A D 2d 465, 466, supra). Although both spouses testified to the absence of any sexual relations since the year 1963, in view of the uncontradicted fact of the petitioner’s continued residence with her husband in the same dwelling for more than four years while carrying on an adulterous relationship with the respondent, the fact that the child’s birth certificate presumably names her husband as the father of her child and the fact that the husband claimed the child as an income tax exemption, it is concluded that the presumption of legitimacy was not rebutted. (People v. Lewis, supra; Moy Mee Soo v. Leong Yook Yick, supra; Matter of Powell v. Anonymous, 18 A D 2d 911; Thompson v. Nichols, 286 App. Div. 810; Matter of Lane v. Eno, 277 App. Div. 324; Matter of Bayne v. Willard, 46 Misc 2d 1079, 1082.) The spouses’ uncorroborated testimony to the *946 absence of any connection does not, under the circumstances revealed by this record, negate access by the husband and consequently the petitioner’s proof falls short of being that clear .and convincing proof necessary to establish the respondent’s responsibility (Matter of Black v. Brown, 27 A D 2d 683, supra). The petition must, therefore, be dismissed.