Raymond E. Addbioh, Jb„, J.
This paternity proceeding was brought by Matilda Martin, as petitioner, against Ralph Lane, as respondent, in order to establish the paternity of a child, Alice Martin, allegedly born out of wedlock to her on March 28, 1966.
In answer to the petition, respondent entered a general denial to being the father.
At a plenary hearing, both petitioner and respondent appeared with attorneys, and petitioner testified, calling two witnesses and her husband from whom she had been estranged for approximately five years. At the conclusion, respondent moved to dismiss the petition upon the ground that the petitioner was a married woman at the time of conception, gestation and birth of the child and therefore, under the statute, incapable of instituting the proceeding. This motion must first be resolved before proceeding to consider whether the evidence'indicates paternity.
Respondent relies upon the holdings in the Matter of Kehn v. Mainella (40 Misc 2d 55), which does support his position, and Lovelace v. Arcieri (17 A D 2d 465), which seems to do so. However there exists a contrary line of decisions postdating them, in Matter of “Anonymous” v. “Anonymous” (43 Misc 2d 1050); Matter of Fitzsimmons v. De Cicco (44 Misc 2d 307); Matter of Bayne v. Willard (46 Misc 2d 1079); Matter of Oliver v. England (48 Misc 2d 335); Matter of Lee v. Stix (55 Misc 2d 940); and Matter of Morris v. “ White ” (29 A D 2d 905), all of which involve instances where a married woman asserted a man other than her husband was the father of her child, and in none of these cases was the respondent conclusively presumed not to be the father because of the matrimonial status of the •mother, but rather the question whether the presumption of legitimacy of a child born to a married woman prevailed or was overcome was decided upon the facts in each case.
Article 5 of the Family Court Act, effective September 1, 1962, provides the procedure for establishing the paternity of a child born out of wedlock, and section 512 thereof defines such a child as one 1 ‘ who is begotten and born out of lawful matrimony ”. This legislative enactment was the successor to former section 119 of the Domestic Relations Law, which provided:
*6 “ 1. A child born out of wedlock is a child begotten and born: (a) out of lawful matrimony; (b) while the husband of its mother was separate from her a whole year previous to its birth; or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court.”
Did the Legislature intend, in enacting section 512, and accordingly eliminating the provisions of subdivisions (b) and (c) of former section 119 of the Domestic Relations Law, that a married woman may not now institute paternity proceedings because her child was born in matrimony and thus is conclusively presumed the legitimate child of her husband? This court answers the question in the negative.
The layman’s understanding of the term “ child born out of wedlock ” means unquestionably “ a child whose father is not the mother’s husband ” (Matter of Kehn v. Mainella, supra, Matter of Fitzsimmons v. De Cicco, supra). To hold otherwise in interpreting section 512 would infer that the Legislature was not cognizant of the common understanding of men.
The court in the Kehn case seemed to rely upon the statement in Lovelace v. Arcieri (supra) that a child born out of wedlock meant a child bom “ out of lawful matrimony ”, which meant “ one born to an unmarried mother ”. This statement was at most obiter dictum, and certainly not necessary in, making the decision upon which the case rested that the mother was not separated from her husband for “ a whole year ” before birth and conception, as the statute then required in the case of a married woman.
Matter of “Anonymous” v. “Anonymous” (supra) very ably defines the meaning of the phrase ‘ ‘ out of lawful matrimony ” as this court believes the Legislature intended in enacting section 512, and the rationale in that decision is accepted and adopted by this court as the only logical conclusion to be arrived at. As was suggested, if the Legislature intended that only unmarried women would be eligible for .relief under section 512, why was section 531 enacted, or even sections 436 and 418 of the Family Court Act, and why must we presume that because former subdivisions (b) and (c) of section 119 of the Domestic Relations Law were eliminated in the enactment of section 512 that the Legislature did not intend that a child born out of lawful matrimony meant a child not only born to an unwed mother, but as well a child whose father is not the mother’s husband.
The court concludes that the petitioner may bring this proceeding, even though married at the time of conception, gestation and birth, and she will be afforded the opportunity to prove by *7 the acceptable standards of proof that her child was fathered by the respondent. Accordingly, the motion to dismiss is denied.
The courts have long recognized that a charge of paternity is one so easily made and. equally difficult to negate (Burke v. Burpo, 75 Hun 568; Holland v. Tracy, 285 App. Div. 1197). Consequently, the courts have laid down the rule that in an action to determine paternity,' the evidence required to sustain an order of filiation should be “ entirely satisfactory ” (Phillips v. Tagliavini, 275 App. Div. 1037, mot. for lv. to app. den. 276 App. Div. 898). The burden of proof must go beyond a mere preponderance of the evidence, and such evidence must be so clear and convincing as to reach the point of entire satisfaction (Commissioner of Welfare v. Rose, 283 App. Div. 781). In another manner of expression, the evidence must be “ sufficient to create a genuine belief * * * a belief which is supported by more than a mere preponderance of the evidence, though not necessarily sufficient to overcome any reasonable doubt ” (Matter of Rebmann v. Muldoon, 23 A D 2d 163, 164). (See, also, Matter of Comr. of Welfare of City of N. Y. v. Fields, 25 A D 2d 504.)
The presumption of legitimacy is “ one of the strongest and most persuasive known to the law ” (Matter of Findlay, 253 N. Y. 1, 7), and attains its greatest strength where the mother is married, for it is presumed ‘ ‘ that a child born to a married woman is the child of her husband where the latter is potent and access is established” (Moy Mee Soo v. Leong Yook Yick, 21 A D 2d 45, 47). The question presented is whether in the case of this married woman the evidence is sufficient to rebut the presumption by clear, convincing and entirely satisfactory proof.
Petitioner had four children by her husband. Marital differences arose and eventually they separated in October of 1962. She testified she began socializing with the respondent whom" she had known for 20 years, and became intimate with him, engaging in sexual relations first in various motels where they would stay overnight. She averred during May, June and July, 1965 her clandestine meetings with the respondent would take place in her trailer where she lived with the children, and as a result she became pregnant with the child, Alice, born on March 28, 1966. She claimed respondent would stay overnight with her and during these periods sexual relations occurred. Petitioner’s claim as to the presence of respondent at the trailer was corroborated by a witness, who even observed him one morning about 7:15 a.m. in the middle of July, 1965, sitting at the kitchen table without a shirt while petitioner wore a robe. Another witness testified the petitioner and respondent were together *8 on a number of occasions, she even double-dated with them.
The respondent did not testify in his own behalf, nor should he have been compelled to do so (Family Ct. Act, § 531), and his failure to do so creates no presumption against him (Matter of Fitzsimmons v. De Cicco, supra; Matter of Bayne v. Willard, supra). However, it did result in his presenting no evidence to refute the contentions of the petitioner.
Petitioner and her husband both testified as to nonaccess since their separation approximately three to three and one-half years before the birth of the child (Family Ct. Act, § 531). While the husband admitted he stopped to see the children at the trailer three or four times, bringing groceries, he denied any sexual relations with her, and she affirmed the fact. This record does not contain any evidence or even inference to the contrary. Furthermore, petitioner stated she had no sexual intercourse with anyone, other than the respondent, during the crucial period of June through August, 1965.
This proceeding does not involve a situation where the mother and her husband were residing in the same abode at the time of conception, and the mother had a secret affair, or even an open one, with another man. Access would be strongly presumed in such a case, and the presumption of legitimacy would most certainly be sustained. In this case petitioner and her husband had been living apart for three to three and one-half years, and access, or the opportunity therefor, has not been established, least of all even suspected by this court.
Upon the evidence in this proceeding, the court finds that petitioner and respondent had sexual intercourse together on a number of occasions during June, July and August, 1965, and as a result thereof, the child, Alice, was born to petitioner. The uncontradicted evidence is that the petitioner had no sexual intercourse with her husband or any person other than respondent during this period, and the court so finds. The evidence is so clear and convincing as to reach the point of entire satisfaction, and the inescapable conclusion to be drawn therefrom is that the respondent is the father of said child.
Accordingly, the court adjudicates the respondent, Ralph Lane, to be the father of the said child born to the petitioner on March 28, 1966, and an order to that effect is to be hereafter entered in accordance with this decision.
The court remits this proceeding for a hearing into the determination of the quantum of support for the child and confinement expenses and medical expenses related to the pregnancy and, thereafter, for the entry of an appropriate decree.