42222. WILKINS v. DEPARTMENT OF HUMAN RESOURCES.
(337 SE2d 20)

BELL, Justice.

This case is here on certiorari to the Court of Appeals. *Wilkins v. Dept. of Human Resources*, 174 Ga. App. 105 (329 SE2d 266) (1985). The facts of the case are summarized in the Court of Appeals' opinion and will only be repeated here in relevant part.

We granted certiorari to consider several issues, only one of which we now find necessary to address. That issue is whether Wilkins, the putative father of J. H. (a minor child born to a woman married to a man other than Wilkins), was entitled to appointed counsel under OCGA § 15-11-30 (b) during a hearing of a petition filed by the Georgia Department of Human Resources (GDHR) to

terminate his parental rights to J. H., see OCGA §§ 15-11-51 through 15-11-54. The Court of Appeals held that Wilkins was not entitled to appointed counsel. *Wilkins v. Dept. of Human Resources*, 174 Ga. App., supra. We disagree.

OCGA § 15-11-30 (b) provides that "[e]xcept as otherwise provided under this chapter, *a party* is entitled to representation by legal counsel at all stages of any proceedings alleging delinquency, unruliness, or deprivation and if, as an indigent person, he is unable to employ counsel, he is entitled to have the court provide counsel for him. If *a party* appears without counsel, the court shall ascertain whether he knows of his right to counsel and to be provided with counsel by the court if he is an indigent person." OCGA § 15-11-30 (b). (Emphasis supplied.)[1]

Wilkins appeared and testified at the termination hearing held in the instant case but was unrepresented by counsel. The trial court noted that Wilkins, who was shown to be indigent, was not represented by counsel, but it did not ask him, despite the requirement of OCGA § 15-11-30 (b), whether he understood that he had a right to court-appointed counsel.

On April 13, 1984, the trial court entered an order stating that Wilkins had not proved paternity, and that the court therefore would not recognize any parental rights in him. The order further terminated whatever parental rights Wilkins may have had in J. H., on the grounds that Wilkins had abandoned the child and that the child was deprived. Wilkins appealed on numerous grounds, but he chiefly contended that under OCGA § 15-11-30 (b) he was entitled to appointed counsel, and that the trial court erred by failing to inform him of that right at the termination hearing.

1. The Court of Appeals affirmed the judgment, holding that the trial court was not required to appoint legal representation for Wilkins as an indigent putative father, even though a putative father may, in some instances, be considered a parent. *Wilkins v. Dept. of Human Resources*, supra, 174 Ga. App. at 107. In reaching that holding, the court reasoned that "where an indigent putative father has performed little or no duties of a parent regarding support or even legitimation of the child, his entitlement to the protection of his rights through appointed representation is diminished." Id. at 108.

We find, however, that an indigent putative father's performance of the duties of a parent does not control the determination of whether he is entitled to appointed representation. Rather, the crucial

---

[1] A termination petition alleging that a parent has abandoned the child, OCGA § 15-11-52 (a) (1), or that the child is a deprived child, OCGA § 15-11-52 (a) (2), is a proceeding alleging deprivation within the meaning of OCGA § 15-11-30 (b). See OCGA § 15-11-2 (8) (c); *Moss v. Moss*, 233 Ga. 688, 690 (212 SE2d 853) (1975).

inquiry is whether the putative father was a "party" to any of the proceedings within the meaning of OCGA § 15-11-30 (b). The outcome of this question depends, in turn, upon an interpretation of OCGA § 15-11-52 (b), as it relates to OCGA § 15-11-30 (b).

In this regard, GDHR, relying on OCGA § 15-11-52 (b), contends that an indigent putative father does not obtain the status of a party to a termination proceeding until he first makes an adequate showing of paternity. GDHR further contends that, since the trial court found that Wilkins did not make an adequate showing of paternity, he was not entitled to appointed counsel at the termination hearing.

OCGA § 15-11-52 (b) provides that "[i]f the paternity of a child born out of wedlock has been established in a judicial proceeding to which the father was a party prior to the filing of the petition [to terminate parental rights], the father shall be served with summons as provided by this chapter. Such father has the right to be heard unless he has relinquished all paternal rights with reference to the child. *The putative father of the child whose paternity has not been so established, upon proof of his paternity of the child, may appear in the proceedings and be heard.* In either event nothing in this Code section shall be construed to preclude the father's petitioning for custody of the child. At the time of the hearing, upon proof of paternity being shown to the court, the father shall be allowed to petition for custody of the child and the court shall grant same, if such is in the best interests of the child." (Emphasis supplied.)

2.(a) At the outset we must decide whether or not OCGA § 15-11-52 (b) applies to Wilkins. OCGA § 15-11-52 (b) permits the putative father of a child "born out of wedlock" to appear at the paternity hearing mandated by that subsection and present proof of paternity. If the phrase "born out of wedlock" only includes children born to an unmarried woman, then § 15-11-52 (b) does not permit Wilkins to introduce proof of paternity in a termination proceeding, as he is the putative father of a child born to a married woman. We find that the phrase "born out of wedlock" refers to either a child born to an unmarried mother or one born to a married woman, but begotten by a man not her husband. Under this interpretation, OCGA § 15-11-52 (b) does apply to Wilkins.

The phrase "out of wedlock" is defined by Webster's Third New International Dictionary, Unabridged (1961), to mean, "with the *natural parents* not legally married to each other" (emphasis supplied), and the phrase "born out of wedlock" has been construed on numerous occasions to include a child born to a married woman by a man other than her husband. See Uniform Act on Paternity, § 1, 9A U.L.A. 626 (1979) (withdrawn 1973, upon promulgation of Uniform Parentage Act); *State v. Coliton,* 17 NW2d 546, 549 (N.D. 1945); *Pursley v. Hisch,* 85 NE2d 270 (Ind. App. 1949); *Estey v. Mawdsley,* 217

A2d 493, 494 (Conn. 1966); *Martin v. Lane*, 291 NYS2d 135, 138 (1968), affirmed in relevant part, 308 NYS2d 248 (1970); *Smith v. Robbins*, 283 NW2d 725 (Mich. App. 1979); *R. D. S. v. S. L. S.*, 402 NE2d 30, 31, fn. 2 (Ind. App. 1980); *In the Matter of the Legitimation of Locklear by Jones*, 334 SE2d 46 (N.C. 1985) (hereinafter, *Locklear*).

In *Locklear*, supra, the North Carolina Supreme Court addressed the issue of whether a man, Earl Jones, claiming to be the father of a child born to a woman who was married to another man, could file a petition to legitimate the child, when the applicable statute provided that only putative fathers of children born out of wedlock could bring such a proceeding. In relevant part the state contended that the phrase "born out of wedlock" referred only to children born to unmarried mothers. In accordance with a majority of jurisdictions, the court rejected this contention: "Our research indicates that the phrase, 'born out of wedlock,' should refer 'to the status of the parents of the child in relation to each other.' *Pursley v. Hisch*, 119 Ind.App. 232, 235, 85 N.E.2d 270, 271 (1949). 'A child born to a married woman, but begotten by one other than her husband, is a child "born out of wedlock" . . . .' *Id.* citing *State of North Dakota v. Coliton*, 73 N.D. 582, 17 N.W.2d 546 (1945). This same interpretation of the phrase is also consistent with the position taken by the Uniform Act on Paternity, § 1, 9A U.L.A. 626 (1979) (act withdrawn 1973), which states, 'A child born out of wedlock includes a child born to a married woman by a man other than her husband.' . . . The alleged parents of Stanley Locklear, Petitioner herein and Stanley's mother, in their relation to one another, did not acquire the status of wedlock. Thus, the minor child was 'born out of wedlock,' although his mother was married to another man, not his natural father." *Locklear*, supra, 334 SE2d at 50-51.

We agree with the above authorities that a child born to a mother who is married, but sired by a man other than his mother's husband, is a child "born out of wedlock." Several reasons compel this conclusion.

In construing statutes we are to look for the intent of the General Assembly and to construe them so as not to result in unreasonable consequences, but to square with common sense and sound reasoning. *Mulkey v. State*, 252 Ga. 201 (2) (312 SE2d 601) (1984).

To construe the phrase "born out of wedlock" to include only children born to unwed mothers would lead to unjust (and perhaps unconstitutional) results. First, pursuant to such a construction, under OCGA § 15-11-52 (b) the putative father of a child born to an unwed mother would be allowed to present evidence of paternity in a termination proceeding, but the putative father of a child born to a wed mother would not. Both could be the actual fathers, yet they

would be treated differently. Moreover, a putative father of a child born to a woman married at the time the child was begotten could be sued for the support of the child, OCGA § 19-7-40 through § 19-7-53; yet, he would not have the right to present evidence of paternity under OCGA § 15-11-52 (b) in a termination proceeding.

Since to construe the phrase "born out of wedlock" to include only children born to unwed mothers would lead to the unreasonable and unsound consequences noted above, we find it reasonable to conclude that the General Assembly intended that phrase to include children born to a married woman, but begotten by a man other than her husband.

(b) We note that it might be inferred from the presumption of legitimacy established by OCGA § 19-7-20 (a) for children "born in wedlock," that the phrase "born out of wedlock" must refer to children born to unwed mothers. However, we disagree.

As already noted, statutes must be construed with the purpose and intent of the General Assembly in mind. OCGA § 15-11-52 (b) focuses on rights of putative fathers in termination proceedings, while OCGA § 19-7-20 deals with the longstanding evidentiary presumption that a child born to a married woman is legitimate. In view of the well-known policies behind OCGA § 19-7-20, we do not hesitate to conclude that the phrase "born in wedlock" is meant to refer to the status of the child, as born to a married woman, so as to raise a presumption that the husband of the married woman is the father of a child born to her,[2] and does not refer " 'to the status of the parents of the child in relation to each other,' " *Locklear,* supra, 334 SE2d at 50.

So construed, OCGA § 19-7-20 fits logically with our holding that a man can be considered the putative father of a child born to a married woman, but begotten by a man other than her husband, and leads to the following rule: a man can be considered the putative father of a child born out of wedlock when the child is born to a woman married to a man other than himself, but, under OCGA § 19-7-20 (a), the mother's husband is presumed to be the father of the child until rebutted by sufficient evidence. Such evidence may be presented, for instance, by the child's mother, so as to have the putative father held liable for the support of the child. See *State v. Coliton,* supra, 17 NW2d 546; *Smith v. Robbins,* supra, 283 NW2d 725; *Martin v. Lane,* supra, 291 NYS2d 135. See also *In re White,* 254 Ga. 678 (1) (333

---

[2] With regard to the rule that "a child born in wedlock is presumed legitimate," at least one authority has abandoned the phrase "born in wedlock" altogether, instead focusing on the status of the mother as married, and creating a presumption that the husband of that mother is presumed to be the child's father, thereby rendering the child presumptively legitimate, Uniform Parentage Act, § 4, 9A UCA 579, 590 (1979). See also *R. M. S. v. S. L. S.,* supra, 402 NE2d at 31.

SE2d 588) (1985).

In this regard several other courts have construed the phrase "born out of wedlock" as we have done, and have found the presumption of legitimacy raised for a child born "in wedlock" to still be applicable. *Locklear*, supra, 334 NE2d at 52; *State v. Coliton*, supra, 17 NW2d at 552; *Martin v. Lane*, supra, 291 NYS2d at 138; *Smith v. Robbins*, supra, 283 NW2d at 727.

Applying the foregoing to the instant case, we hold that a man claiming to be the putative father of a child born to a married woman is entitled to appear and introduce proof of paternity under OCGA § 15-11-52 (b), bearing in mind that he must overcome the presumption of legitimacy created by OCGA § 19-7-20.

3. Having decided that OCGA § 15-11-52 (b) applies to Wilkins, we now address the issue of whether he is entitled, as an indigent, to have court-appointed counsel assist him.

First, OCGA § 15-11-30 (b) directs that we look to *all stages of any proceedings* to determine if a person is a "party" and entitled to counsel within the meaning of that Code section. Clearly, the determination of a putative father's paternity is a stage of a termination proceeding.

OCGA § 15-11-30 (b) does not define the term "party"; however, in general, Georgia law broadly defines a "party" to include one who is directly interested in the subject matter of the litigation, has the right to adduce testimony, to cross-examine witnesses, to control the proceedings, and to appeal from the judgment. *Berry v. Slappey*, 229 Ga. 109, 110 (189 SE2d 394) (1972); *Roberts v. Hill*, 81 Ga. App. 185 (58 SE2d 465) (1950); *Williams v. Cowart*, 27 Ga. 187, 192 (1859).

We find that a putative father clearly falls within the general definition of a "party," see *Berry v. Slappey*, supra, 229 Ga.; *Roberts v. Hill*, supra, 81 Ga. App., for the purposes of the paternity hearing mandated by OCGA § 15-11-52 (b). Under the terms of that Code section, a putative father has the right to petition for custody of the child, appear and be heard in order to present proof of paternity, and upon proper proof thereof, to proceed to a hearing on the merits of the GDHR's termination petition and his own custody petition.[3] This stage of a termination proceeding is therefore one in which a putative father has a direct interest and has the right to adduce testimony and cross-examine witnesses. See *Berry v. Slappey*, supra, 229 Ga.; *Roberts v. Hill*, supra, 81 Ga. App.

As is evident, this stage of a termination proceeding is a decisive one for a putative father, and, because of the burden imposed upon

---

[3] As to the findings necessary to terminate parental rights and the possible dispositions of a child pursuant to a termination petition, see OCGA §§ 15-11-51, 15-11-54, 15-11-34.

him by OCGA § 15-11-52 (b), is one at which he has a critical need for legal representation.

For the foregoing reasons we conclude that Wilkins was a party to the instant proceeding within the meaning of OCGA § 15-11-30 (b) for the initial purpose of the paternity determination, and was therefore entitled to appointed counsel.

*Judgment reversed. All the Justices concur, except Hill, C. J., Marshall, P. J., and Weltner, J., who dissent.*

HILL, Chief Justice, dissenting.

We deal here with the rights of a putative father of a child born in wedlock. One of the Code sections upon which the majority relies to establish this father's right to counsel, OCGA § 15-11-52 (b), applies to children "born out of wedlock." In my view, we make a serious mistake by expanding this Code section and declaring that putative fathers of children born in wedlock are entitled to the appointment of counsel at state expense. I therefore would affirm the decision of the Court of Appeals.

I am authorized to state that Presiding Justice Marshall and Justice Weltner join in this dissent.

DECIDED NOVEMBER 27, 1985.

*Carol F. Baschon, Kay A. Giese, Mary R. Carden, Phyllis J. Holmen,* for appellant.

*Michael J. Bowers, Attorney General, Mary Foil Russell, Staff Assistant Attorney General,* for appellee.