Gregorio P. ZEPEDA, Jr., Appellant,

v.

AMERICAN NATIONAL INSURANCE CO., Appellee.

No. 15367.

Court of Civil Appeals of Texas, San Antonio.

May 28, 1975.

Rehearing Denied Oct. 1, 1975.

James L. Branton, Hardberger, Branton & Herrera, San Antonio, for appellant.

Thomas H. Sharp, Jr., San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Gregorio P. Zepeda, Jr., seeks reversal of a judgment, following a non-jury trial, denying him recovery for the death of his minor child under a family life insurance policy issued by defendant, American National Insurance Company.

Plaintiff purchased the insurance in question from defendant on November 8, 1965. At that time plaintiff was married to Maria Elena Zepeda. The policy named plaintiff as "the insured," and named his then wife, Maria Elena, as "insured spouse." Under the terms of the policy, defendant bound itself to pay $5,000.00 upon the death of plaintiff, the insured, $1,000.00 on the death of the "insured spouse" and $1,000.00 on the death of "each covered child."

Two children were born to plaintiff and Maria Elena, one in 1966 and the other in 1968. The amount of premium payable under the policy was not affected by the number of children covered by the policy. The premium for the insurance on the life of plaintiff is $6.97 per month, and the premium for the insurance covering the "insured spouse" is $1.30 per month.

Plaintiff and Marie Elena were divorced in the spring of 1969, and in January, 1970, plaintiff married his present wife, Consuelo. Two children were born to plaintiff and Consuelo, the younger of which was Rachel Marie, who was born on July 30, 1972. Rachel Marie died on November 23, 1972, and by this suit plaintiff seeks to recover for death of such child. The judgment of the trial court is based on the conclusion that the deceased infant, Rachel Marie, was not a "covered child" under the policy.

It is undisputed that plaintiff has paid all premiums due and that the policy was in full force and effect at the time of the death of Rachel Marie. The policy was never changed to substitute Consuelo Zepeda, plaintiff's second wife, for Maria Elena Zepeda as "insured spouse."

The policy contains the following definitions:

"THE INSURED: The term 'THE INSURED' shall mean the Insured named in the application for this Policy and specified on the Policy Data Page.

INSURED SPOUSE: The term 'INSURED SPOUSE' shall mean the Spouse named in the application for this Policy and specified on the Policy Data Page.

COVERED CHILD: A child or legally adopted child of the Insured and Insured Spouse or a stepchild of the Insured or Insured Spouse shall be a Covered Child provided such child was named in the application and was born at least 15 days prior to the effective date of this Policy. A child born to the Insured and Insured Spouse after the effective date of this Policy shall become a Covered Child on the date such child attains age 15 days. A child legally adopted by the Insured after the effective date of this Policy shall become a Covered Child on the date such child was adopted or on the date such child attains age 15 days, whichever

date is later. A child shall cease to be a Covered Child on the policy anniversary following such child's 25th birthday."

Both the application for the policy and the "policy data page" identify "the insured" as plaintiff, Gregorio P. Zepeda, Jr. The application names plaintiff's then wife, Maria Elena, as "spouse." The "policy data page" identifies "insured spouse" as Maria Elena Zepeda. It is clear, then, that in reading the policy, the term "the insured" must be read as "Gregorio P. Zepeda, Jr.," while "insured spouse" must be read as "Maria Elena Zepeda." With this in mind, the definition of "covered child" establishes the following categories:

1. A child of Gregorio P. Zepeda, Jr., and Maria Elena Zepeda, who is named in the application and was born at least 15 days prior to November 8, 1965, the date of the policy. No contention is made that the deceased infant is included within this category.

2. A stepchild of Gregorio P. Zepeda, Jr., who is named in the application and was born at least 15 days prior to November 8, 1965. The deceased infant clearly does not fall within this category.

3. A stepchild of Maria Elena Zepeda who is named in the application and was born at least 15 days prior to November 8, 1965. This category does not include the deceased infant.

4. A child born to Gregorio P. Zepeda, Jr., and Maria Elena Zepeda after November 8, 1965, and who attains age 15 days. Rachel Marie, the deceased infant, was born to Gregorio P. Zepeda, Jr. and his second wife, Consuelo Zepeda, and, therefore, is not a "covered child" within this portion of the definition.

5. A child legally adopted by Gregorio P. Zepeda, Jr., after November 8, 1965, and who has attained age 15 days. The deceased child does not fall within this class.

■ If effect is given to the plain language of the policy, it must be concluded that Rachel Marie was not within any of the categories established by the definition of "covered child."

Plaintiff argues that the "definition of 'covered child' was a description of the limits of relationship between the insured and a minor child so as to constitute said child a 'covered child,' and not an all-inclusive, exhaustive definition of all relationships which constituted a 'covered child.'" That is, plaintiff asserts that the definition of "covered child" merely describes "the outside limits or parameters of the covered relationships," and that, since the coverage "*extends* to an *adopted* child of the *insured alone*," it "necessarily includes relationships *within* the outer limit, to-wit: a *natural* child of the *insured alone*."

We find nothing in the language of the policy to support this interpretation. In effect, plaintiff contends that the definition of "covered child" should be construed as though it were prefaced by the clause, "the term 'Covered Child' shall include, but shall not be limited to, the following:" or that the definition of "insured spouse" should be changed to, "The term 'Insured Spouse' shall mean the Spouse named in the application for this Policy and specified on the Policy Data Page, or any subsequent Spouse of the Insured." It might be pointed out that even this re-wording of the definition of "insured spouse" would not be sufficient to justify plaintiff's interpretation of the policy as extending to a "natural child of the insured alone," since the term "natural child," in both its technical and popular meaning, means an illegitimate child. *Gibson v. Dickson,* 178 S.W. 44, 48 (Tex.Civ.App.—Dallas 1915, writ ref'd); *State v. Coliton,* 73 N.D. 582, 17 N.W.2d 546, 549 (1945). We find no basis in the policy for changing the definition to read, "The term 'Covered Child' shall mean any child, adopted child or stepchild of the Insured."

Plaintiff, relying on the testimony of one of defendant's agents, insists that for 12 years preceding the trial of this case, defendant had interpreted the definition of "covered child" to mean "that if the child's

last name was the same as 'the insured,' then it was a 'covered child' under the definition."

The testimony of the defendant's employee does not support plaintiff's contention. It is clear from the testimony that this employee was merely testifying as to representations which he made to persons whom he described as "my policyholders." His testimony clearly relates to what he describes as "my own opinion" and his understanding. He stated, "As far as I understand . . . as long as they have the same last name, step-children or natural-born children," they are covered. It would require no little straining to interpret this testimony as establishing that defendant itself, as distinguished from this particular employee, interpreted the definition as covering children born after the issuance of the policy to the insured by a spouse other than the spouse identified in the policy.

■ The policy itself recites that the policy cannot be modified except by an endorsement signed by the president, a vice-president or the secretary of defendant. Under this recital, as well as under the provisions of Section 21.04, Tex.Ins.Code Ann. (1963), whatever statements the employee made to plaintiff following plaintiff's second marriage cannot be given the effect of modifying the terms of the policy so as to extend the coverage of the policy. Therefore, the trial court did not err in sustaining defendant's motion *in limine* to exclude representations made by the employee to plaintiff to the effect that Rachel Marie was covered by the policy. In any event, plaintiff was permitted to testify to the effect that, after he had divorced Maria Elena and married Consuelo, the employee had assured him that any children born of the second marriage would be covered. The evidence which plaintiff claims was wrongfully excluded was, in fact, admitted.

Defendant's employee testified that an insurance policy of the type purchased by plaintiff can be purchased by one who does not, at the time he purchases the policy, have a spouse. He also testified that this type policy can be purchased by a married man who elects not to have his wife covered and, therefore, the policy would not include an "insured spouse." Much of the testimony of this witness shows a clear lack of understanding of the provisions of the policy in question. The policy is identified in the application as a "two-parent family policy." The policy shows on its face that it contemplates the insurance not only of the "insured," but also of his spouse. On its face, the policy is labeled: "Non-Participating Family Policy—Whole Life Insurance with Accidental Death Benefit on Insured and Insured Spouse—Term Insurance on Each Covered Child to Policy Anniversary Following Such Child's 25th Birthday." It may be conceded that a "spouseless" insured can purchase a policy insuring him and his children, or that a married man may purchase a policy insuring him and his children but not his spouse. But it is difficult to understand how such a policy could be referred to as a "two-parent family policy" or as a "Non-Participating Family Policy" affording life insurance to "Insured and Insured Spouse." Nor can it be readily understood how such a policy would contain a definition of "insured spouse" and define "covered child" with reference to the "insured" and "insured spouse."

The record indicates that, at the close of the evidence on February 18, 1974, the trial judge announced from the bench that his judgment was in favor of plaintiff. At that time counsel for plaintiff announced that he would prepare the judgment. The judgment was not prepared, and on March 26, 1974, the court, at the request of counsel for defendant, summoned plaintiff's counsel and inquired why a judgment had not been tendered. Plaintiff's counsel explained that the press of business had prevented his preparing the judgment and tendering it to opposing counsel and the court. The court then announced that it had changed its mind and was rendering judgment for defendant.

■ Plaintiff complains that the court erred in "carrying on ex parte proceedings

on the merits without the knowledge of Plaintiff's attorney after . . . judgment had been announced for Plaintiff and before the final judgment was tendered to the Court for entry. . . ." The record does not disclose the holding of such ex parte proceedings. According to the transcript of the March 26 proceedings, counsel for defendant had ordered the record in the case, apparently preparatory to an appeal of the judgment previously announced orally, and had presented such statement of facts, together with the policy, to the court. We do not believe this establishes that the trial court conducted ex parte proceedings.

We also overrule plaintiff's contention that the trial court erred in "changing its judgment on the merits in this case by reason of a small delay in tendering the judgment to the Court for entry. . . ." There is nothing in the record to establish that the delay by plaintiff's counsel in presenting a judgment for entry caused the trial judge to change his mind or influenced the final decision in any way. The trial court stated that he changed his mind after carefully re-reading the provisions of the policy.

The judgment of the trial court is affirmed.