Edward T. Sullivan,
Family Court Judge. Motion to dismiss petition and for summary judgment under CPLR 3211 and 3212, upon which habeas corpus proceedings were initiated in Supreme Court of the State of New York for the return of custody of the child 11 Alan ’ ’. Subsequent to the hearing held in Supreme Court, Saratoga County, New York, on the return day of the original order to show cause, the proceeding was transferred to Family Court, Saratoga County, New York, by order of Honorable D. Vincent Cerrito, dated and filed in the Saratoga County Clerk’s office on November 21, 1967, and filed in the Saratoga County Family Court on January 9, 1968. Prior thereto, the above title was substituted in place and instead of the original title by order of Justice Cerrito to preserve for as long as possible the anonymity of the parties, particularly from each other.
Subsequently, in December, 1967, by stipulation the pleadings were amended to add as a respondent, “ John Roe ”, being a fictitious name to designate the f ather of the child. The fictitious names “John Doe” and “Jane Doe” designate the foster parents who are also the proposed adoptive parents. These latter respondents initiated the motion to dismiss. They became parties to this proceeding by order of Justice D. Vincent Cerrito, dated and filed November 21, 1967, permitting them to intervene.
DECISION
Relator is the mother of the child “ Alan ” whose custody is in dispute herein. “ John Roe ” is the father of said child. The mother and father having marital difficulties in the Fall of 1966 terminated their marriage contract by a Mexican divorce decree obtained by the mother. Unknown to them, she was pregnant at the time of the Mexican decree. After the pregnancy was ascertained, they conferred, and decided upon a course of action.
Pursuant thereto, after the child was born on July 14,1967, he was taken from the hospital by a child welfare case worker, Saratoga County Department of Social Services. Shortly thereafter, in July, 1967, both the mother and father executed a written unconditional surrender of the child under section 384 of the *763 Social Services Law, and a consent that the child be placed out for adoption. This surrender and consent executed by both parents was filed in the Saratoga County Clerk’s office on August 1, 1967.
The child, although conceived during wedlock, was born after the mother obtained the Mexican divorce decree. However, the father has acknowledged his paternity of the child in writing.
On September 1, 1967, the child was placed with the foster parents (“ John Doe ” and “ Jane Doe ”) for adoptive purposes by the Saratoga County Department of Social Services under a written ‘ ‘ Adoptive Placement Agreement ’ ’, which they and the Saratoga County Department of Social Services executed.
Subsequently, the mother alone gave notice of revocation of the aforesaid surrender and consent of the Department of Social Services. The father resisted her inducements to have him join with her in the notice of revocation. Further, he has refused to join with her in the proceeding to rescind the surrender and consent, opposed and still continues to oppose same, and has joined the proposed adoptive parents in this motion to dismiss the petition for rescission and return of custody to her.
In addition, he, in reliance upon the jointly executed surrender and consent, has materially changed his position in that he has married again and is now expecting a child by his present wife. On the oral argument of this motion to dismiss, the Department of Social Services also joined with the adoptive parents in seeking the dismissal of the petition. Relator made the petition on November 2, 1967, after the Department of Social Services refused to return the child to her.
The Department of Social Services of Saratoga County is an authorizing agency for the placing out of children for adoption under the Social Services Law. The procedure thereunder is statutory, as is the adoption procedures under section 111 et seq. The surrender and consent instrument is a contract — a contract sanctioned by statute (Social Services Law, § 384; Matter of Geiger, 6 A D 2d 977; People ex rel. Grament v. Free Synagogue Child Adoption Comm., 194 Misc. 332).
The contract remains under the supervision of the courts, as stated in the Geiger case (supra). The moving parties do not contend that the contract of surrender and adoption is irrevocable, nor does the statute designate the instrument as irrevocable. Even where a statute does designate an instrument as irrevocable, e.g., an agreement to arbitrate, it is conditioned by such phraseology as, “ save upon such grounds as exist at law or in equity for the revocation of any contract. ” (Matter of Zimmerman v. Cohen, 236 N. Y. 15, 20.) In Zimmerman the Court of Appeals *764 went on to state, ‘ ‘ the contract * * * cannot be revoked at the will of one party to it, but can only be set aside for facts existing at or before the time of its making, which would move a court of law or equity to revoke any other contract or provision of a contract.” (Emphasis added.)
The motion to dismiss the petition as a matter of law is based upon the fact that both the mother and father executed the contract of surrender and consent, but the father refused and still refuses to join in either the act or revocation or the proceedings to rescind. In fact, as stated above, he joins in opposing rescission and also seeks the dismissal of the petition. It is the moving party’s contention that where two parties execute a written contract, the law requires that the same two parties join together in an act of revocation, and that both are necessary to seek a judicial rescission of the contract. The proponents of the motion rely upon the expression by the Court of Appeals of the long-recognized principle that, ‘ ‘1 Where several persons are arrayed on the same side of a transaction * * * one of them alone cannot repudiate or terminate the contract, or obtain its rescission, without the consent or against the objections of the others. ’ ’ ’ (Denker v. Twentieth Century-Fox Film Corp., 10 N Y 2d 339, 345.) In their argument and in their brief, the mov-' ing parties express the principle of contract law upon which they base their motion, as follows: “A person who is a joint obligor on a contract cannot rescind without the consent of the other obligor.” Thus, they contend that relator, who not only does not have the consent of her joint obligor, but instead has his continuing rejection of her efforts to induce' him to join her plus his open opposition to her efforts to revoke and,to her proceedings to rescind, has no standing in court to bring the habeas corpus proceeding.
The father of the child, relator’s exhusband, designated herein as 11 John Roe ”, was examined before trial on stipulation in the habeas corpus proceeding and his deposition was submitted with the moving papers. While the court has read it, this testimony is not a factor considered in reaching its determination herein; nor is it deemed necessary, since relator in her affidavit answering this motion to dismiss her petition states ‘ ‘ that she has attempted to induce her ex-husband, ‘ John Roe ’, to join in the rescission, but he has refused to do so.” Relator contends that in effect under the doctrine of parens patriae, the primacy of the natural right of the mother against custody in outsiders requires the court to determine only two things: (1) that the welfare of the child will be promoted, and (2) that the mother is a fit parent. Also, citing Geiger and Grament *765 (supra); that the contract of surrender “ remains under judicial supervision” (Matter of Geiger supra, p. 978); and these two principles together are superior to the rule of general contract law relied on by the moving parties where the subject of the contract is not real or personal property, as such. She expresses this principle as follows: ‘ ‘ The contractual rights of the parents must give way to what is in the best interest of the child.”
This tenet could well apply in certain situations, but, in the opinion of the court, does not control the situations of the parties involved in this motion to dismiss. Relator is not defending her right to custody against one who seeks to divest her of it because of some alleged indiscretions; nor is she seeking to regain custody of her child on the basis of improved circumstances after loss of custody because of some established past misconduct; nor is she seeking to regain custody from individuals in whose care she left her child voluntarily without legal instruments or sanctions ; nor is she in the position of an unwed mother; nor is the child alleged to be under harmful custodial circumstances. On the contrary, she seeks to have the court undo what she knowingly, understandingly, and advisedly did with legal representation and guidance. She and her co-obligor executed a formal written contract, sanctioned by statute, with a legally authorized agency for the purpose of having their child placed out for adoption; and now she alone petitions the court to erase it from existence. This court is of the opinion that, without at least the consent of the cosigner of the surrender instrument, under the situations presented herein, she has no standing to petition for judicial rescission.
The jointly signed instrument is a contract in the full, true, and general sense of the term. Under the contract and under subdivision 2 of section 383 of the Social Services Law, the department has the guardianship and custody of the child whether or not it succeeds in having the child finally adopted. The authorized agency may not thereafter insist upon returning the child to the other parties to the surrender contract. It is charged thereafter with the care and supervision of the child, unless the child be adopted. (People ex rel. Anonymous v. Perkins Adoption Soc., 271 App. Div. 672, 674.) The contract with the authorized agency is a tremendously important instrument upon which Social Services Departments, adoption agencies, intended adoptive parents, and, in this case, the father of the child, rely. The statutory structure of the adoption procedures depends on it. It would be subversive of the welfare of all of them and of a considerable portion of the public and tend to destroy the processes by which adoptions are accom *766 plished, if the contract were revocable at will or upon mere whim (People ex rel. Harris v. Commissioner of W elfare, 188 Misc. 919, 922). The court in that case also said, citing Zimmermcm v. Cohen (supra), which was concerned with an arbitration agreement and not a custody contract, “while such a surrender doubtless may be revoked for facts and upon grounds which would lead a court to revoke any kind of contract * * * it is not revocable at the will or upon the mere whim or caprice of the parent or merely because the parent has experienced a change of mind or heart.” (Emphasis added.)
Against an authorized agency, the courts have held that the grounds of rescission of a surrender contract to be alleged and proved, as stated in McGaffin v. Family & Children’s Service of Albany (7 A D 2d 769, 770) are that it practiced fraud, coercion, wrongdoing, overreaching, or had chargeable knowledge thereof. Belator’s petition contains no such allegation. These grounds are the grounds to revoke any kind of contract. I find as a conclusion of law that the general principle of contract law as expressed in Zimmerman (supra) and in Denker (supra), is applicable to relator’s position herein. I hold that she has no legal standing before the court and that her petition therefore does not place the surrender contract before the court for its “ supervision” and that the court has no authority herein to apply the equitable doctrine of parens patriae.
The petition contains no allegation of coercion, force, threat, fraud, misrepresentation, or wrongdoing by her cosigner to induce her to sign the surrender contract whereby the court would be moved in law or equity to rule out the necessity of his consent as an exception to the general principle expressed by the Court of Appeals in Denker (supra).
As to relator’s contentions in her argument and in her brief, that the father’s consent or his rescission was not necessary since his signature on the surrender and consent instrument was not necessary, on the theories: (1) that he had previously abandoned the child, or (2) that the child, though legitimate, was “born out of wedlock ”, are untenable.
Neither is alleged in the petition. The allegation in the petition, “ That petitioner and petitioner’s parents paid all medical and hospital expenses incurred in the birth of her son ’ ’, standing alone and unamplified as it does, although admitted by the father’s answer, neither establishes nor alleges abandonment. It does not raise a material issue of fact requiring a trial. Matter of Hayford (109 Misc. 479), cited by relator, is not applicable to the situations of the parties herein. There is no allegation of his refusal and in fact both parents signed the *767 surrender and consent instrument within two weeks after the birth of the child. At the time of the execution of the surrender instrument, no abandonment had been established nor had claim of it been made known to the Social Services Department. His signature was, therefore, required under section 384 (subd. 1, par. [a]) of the Social Services Law.
Eelator’s definition of “born out of wedlock” is ingenious but unacceptable. A child who is born out of wedlock is both begotten and born out of lawful matrimony.
I find that the child ‘ ‘ Alan ’ ’ herein was legitimate, was born in wedlock, and was not abandoned by either parent.
Eelator’s petition is dismissed and judgment in favor of the respondents is directed, without costs, pursuant to CPLR 411.