Argued and submitted April 9, reversed November 28, 1984, reconsideration denied January 25, petition for review denied March 19, 1985 (298 Or 822)

**BAKER,**
*Appellant,*

*v.*

**MUNRO,**
*Respondent.*

(214; CA A29883)

692 P2d 126

Christine Chute, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine L. Dickey, Assistant Attorney General, Salem.

John W. Hitchcock, McMinnville, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, Joseph, Chief Judge,* and Warren, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Rossman, J.

## JOSEPH, C. J.

In December, 1976, plaintiff mother had sexual relations with Pastor. When they married two months later, mother was pregnant. Pastor had agreed to the marriage as a result of mother's representation that he was the father of the child. They separated approximately a month and a half later, on April 1, 1977. Later that month the state, on behalf of mother, initiated this filiation proceeding against defendant, the putative father. The trial court entered a decree of annulment on July 15, which declared the marriage to Pastor to be void from the beginning. Neither party to the marriage challenged that decree. Forty-five days later, on August 30, 1977, mother gave birth to the child.

■ In order to initiate a filiation proceeding under ORS 109.125, a woman must be a mother of a "child born out of wedlock." The trial court granted defendant's motion for summary judgment, because it concluded that, under *former* ORS 107.115(1), the annulment was not effective until 60 days after it was entered and that, under *former* ORS 109.125,[1] the child, having been born during that period, is not technically a "child born out of wedlock."[2]

Defendant argues that mother's marriage to Pastor was not void, but merely voidable under ORS 106.030, because Pastor's consent to the marriage was obtained by mother's false representation that he was the father of her unborn child. If a marriage is voidable, it "shall be void from the time it is so declared by decree of a court." ORS 106.030. *Former* ORS 107.115(1) provided that a decree of annulment "shall not be effective insofar as it affects the marital status of the parties until the expiration of 60 days from the date of the

---

[1] Approximately two years after this proceeding was commenced, the legislature modified the definition of "child born out of wedlock" to mean "a child born to an unmarried woman, or to a married woman by a man other than her husband, if the conclusive presumption in ORS 41.350(6) (1979 Replacement Part) and ORS 109.070(1) does not apply." ORS 109.124(2). Under that definition of "child born out of wedlock," mother clearly would have standing.

[2] Mother is the named plaintiff in the proceeding. Because she had received public assistance, the state represents her and initiated the action; however, the action was not brought as an *ex rel* proceeding. No undertaking was filed. For that reason, defendant moved this court to dismiss the appeal. We denied that motion, because a bond is not required under ORS 22.010 in an appeal in a proceeding in which the state is "interested."

decree."[3] Defendant contends that the trial court was correct in holding that, because the child was born within 60 days after the entry of the decree of annulment, mother does not have standing to bring a filiation action, because she is not a mother of a child born out of wedlock. In *Fox v. Hohenshelt,* 275 Or 91, 95, 549 P2d 1117 (1976), the court stated:

"We believe that the term 'a mother of a child born out of wedlock,' as used in ORS 109.125(1)(a) to define what women may institute paternity proceedings under that statute, was intended to refer to a mother who was not married at the time the child was born."

Defendant's argument would be persuasive were it not for the fact that, when the court entered the decree of annulment, it erroneously declared the marriage void *ab initio.* Because the marriage was merely voidable under ORS 106.030, rather than void under ORS 106.020, the court erred. Defendant contends that, because the trial court did not have statutory authority to void the marriage from the beginning, it did not have "jurisdiction." Defendant is mistaken. The trial court had personal and subject matter jurisdiction. Unless the rendering court lacks personal or subject matter jurisdiction, a *judgment* is not void. *Wood v. White,* 28 Or App 175, 178, 558 P2d 1289 (1977). If a judgment is not void, a party to it cannot "collaterally impeach it for errors of law or irregularities in practice which do no more than render it merely erroneous or voidable." *Schmid v. City of Portland,* 83 Or 583, 590, 163 Pac 1159 (1917).

Although in the present case defendant was not a party to the decree voiding the marriage *ab initio,* a "decree in a divorce suit * * * binds the whole world as to the *status* of the parties, to the extent that their status is the *res adjudicated* * * *." (Emphasis supplied.) *In re Rowe's Estate,* 172 Or 293, 304, 141 P2d 832 (1943). The erroneous decree voiding mother's marriage *ab initio* was not appealed and must be given effect according to its terms. The child was therefore born out of wedlock. Accordingly, mother has standing to initiate this filiation proceeding.

Reversed.

---

[3] The statute now provides for a 30-day extension of the effective date.