812 P.2d 1216

**Joseph M. JOHNSON,
Petitioner-appellant-cross
respondent,**

v.

**Michele STUDLEY–PRESTON,
Respondent-cross appellant.**

**No. 18428.**

Supreme Court of Idaho,
Twin Falls, October 1990 Term.

June 7, 1991.

Rehearing Denied June 7, 1991.

Roark, Donovan, Praggastis, Rivers & Phillips, Hailey, for petitioner-appellant-cross-respondent. Kathleen E. Rivers argued.

Lawson & Peebles, Ketchum, for respondent-cross-appellant. Brian L. Ballard argued.

## ON DENIAL OF PETITION FOR REHEARING

BAKES, Chief Justice.

Appellant Joe Johnson appealed from the magistrate's order granting summary judgment in favor of respondent Michele (Shelley) Studley–Preston and denying Joe's claim of paternity, based on the magistrate's conclusion that Joe had not established a relationship with the child and thus he had no standing to bring a paternity action. Shelley cross appealed the magistrate's decision to deny her request for attorney's fees. On appeal, the district court affirmed the magistrate's decision to deny Joe's paternity claim and Shelley's request for attorney's fees. Both parties appealed the district court decision.

Joe Johnson and Shelley Studley–Preston met in Oregon in October of 1986 and entered into an intimate relationship. Shelley told Joe at the end of January that she was pregnant and that he was the father. In fact, she sent a card to him on Valentine's Day of 1987, signed by her and "baby." The two began planning a marriage and signed an application for an Oregon marriage certificate in February, 1987. They planned to live together in Portland, Oregon. Joe helped Shelley financially for travel, moving and living expenses, and pre-natal care, giving her approximately $2,500 over a three-month period.

In March, 1987, Shelley informed Joe that she no longer wanted to marry him and that she planned on marrying somebody else. Shelley married Scott Preston on May 29, 1987, and the child, Anneka, was born on September 29, 1987. The birth certificate states that the mother's name is Michele Studley and the father's name is Scott Preston. Scott has at all times acknowledged the child as his. Since her birth, Anneka, Shelley and Scott have lived together as a family.

Joe offered to pay one-half of the birth expenses and support for the child and sent many letters to Shelley and her attorney attempting to work out the matter, but Shelley refused to cooperate and denies that Joe is the father. In 1988, Joe considered bringing this action but decided to wait awhile, seek counseling, and then determine if he still wanted to bring the action. In December, 1988, Joe attempted to protect his rights by filing a claim of paternity with the Putative Father Registry in Idaho. However, in a letter to Shelley's attorney, the Idaho state registrar stated that since the child was not born out of wedlock, any attempted registration by Joe with the Putative Father Registry would be considered invalid. Joe then filed a complaint for filiation on January 24, 1989, seeking a determination of his paternity of Anneka Studley–Preston and requesting visitation rights.

Shelley filed a motion for summary judgment, and the magistrate granted that motion, based on his conclusion that Joe had no standing to assert a claim of paternity because he did not attempt to establish a relationship with the child until 16 months after the child was born. Joe appealed this decision to the district court; Shelley cross appealed the magistrate's denial of her attorney fees. On appeal the district court affirmed the magistrate's decision with regard to both issues. Joe has appealed the district court's decision affirming the magistrate's dismissal. Shelley has cross appealed the denial of attorney fees. We now reverse the magistrate's decision denying Joe Johnson's paternity claim and vacate the order regarding attorney fees.

 Preliminarily, we note that summary judgment should only be granted when no genuine issues of material fact exist after the pleadings, depositions, admissions and affidavits have been construed most favorably to the opposing or non-moving party, and when the moving party is entitled to judgment as a matter of law. *Dekker v. Magic Valley Regional Medical Center*, 115 Idaho 332, 333, 766 P.2d 1213, 1214 (1988); *Corbridge v. Clark Equipment Co.*, 112 Idaho 85, 86, 730 P.2d 1005, 1006 (1986); *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986). Liberal construction of the facts in favor of the non-moving party requires the court to draw all reasonable factual inferences in favor of the non-moving party. *Williams v. Blakley*, 114 Idaho 323, 324, 757 P.2d 186, 187 (1988); *Blake v. Cruz*, 108 Idaho 253, 255, 698 P.2d 315, 317 (1985).

The magistrate granted Shelley's motion for summary judgment, dismissed Joe's paternity action, and entered findings of fact in which he found that Johnson "did nothing or virtually nothing" toward either attempting to establish a relationship with the child or paying or offering to pay any expenses relating to the child. The court found that "it is undisputed that he has paid no sums toward the support of the child," and "if Johnson paid any prenatal expense, it must have been minimal." From those findings of fact the trial court concluded that our decision in *Petition of Steve B.D.*, 112 Idaho 22, 730 P.2d 942 (1986), was controlling. However, the magistrate did not construe the facts in favor of the non-moving party, as our cases require, but erroneously resolved them in favor of the moving party. *Williams v. Blakley, supra.* That improper resolution of the disputed facts would, in itself, require reversal.

Additionally, we conclude that the trial court erred in its application of our *Steve B.D.* case. In *Steve B.D.*, the mother of a child born out-of-wedlock put the child up for adoption without the father's knowledge or consent. The father had made little or no contact with the child since its birth. The mother later attempted to revoke her consent to the adoption, and the father testified at the revocation hearing as to his paternity. However, he did not sign an affidavit of paternity. When the magistrate denied the mother's petition to revoke her consent to the adoption, the father then moved to intervene in the adoption proceedings, claiming that his consent was also required before the child could be adopted. Both the magistrate and the district court on appeal denied the father's intervention, holding that the father's consent was not

required. The issue before this court in *Steve B.D.* was whether "the denial of [the father's] ability to prevent the child's adoption violated his constitutionally protected [fourteenth amendment due process] interest in the opportunity to develop a parental relationship with the child." 112 Idaho at 24, 730 P.2d 942. We held that "where the unwed father has not developed a substantial relationship with the child, and has not been denied the opportunity by the state, he has no interest protected by the Fourteenth Amendment, and the state is not required to obtain the father's consent to the child's adoption." 112 Idaho at 25, 730 P.2d 942.

In this case, the magistrate applied *Steve B.D.* and, based upon his erroneous resolution of the facts against, rather than in favor of the non-moving party, concluded that since Joe Johnson had not established a substantial relationship with Anneka, he was precluded from filing a paternity action. We conclude that the magistrate erred both in resolving the factual disputes on summary judgment and in his legal conclusion that Joe cannot file a paternity action on the facts of this case.

I.C. § 7–1103 defines "child born out of wedlock" as "a child who is begotten and born outside of lawful matrimony." While this phrase has commonly been construed to mean only a child born to an unmarried mother, it is susceptible to another interpretation. Many jurisdictions have interpreted the phrase "child born out of wedlock" to mean either a child born to an unmarried mother *or* a child born to a married woman but fathered by a man other than the mother's husband. For example, in *Matter of Legitimation of Locklear by Jones*, 314 N.C. 412, 334 S.E.2d 46 (1985), the North Carolina Supreme Court, in a paternity action, held that a child was "born out of wedlock" because her father was not the man to whom her mother was married when she was born. The court stated:

> Our research indicates that the phrase, "born out of wedlock," should refer "to the status of the parents of the child in relation to each other." ... "A child born to a married woman, but begotten by one other than her husband, is a child 'born out of wedlock'...."

334 S.E.2d at 50 (citations omitted, emphasis added).

As the North Carolina court pointed out, this is the same position taken by the Uniform Act on Paternity, which states that "[a] child born out of wedlock includes a child born to a married woman by a man other than her husband." Unif. Act on Paternity § 1, 9B U.L.A. 350 (1990). *See also Girard v. Wagenmaker*, 173 Mich. App. 735, 434 N.W.2d 227 (1988); *Wilkins v. Georgia Dept. of Human Resources*, 255 Ga. 230, 337 S.E.2d 20 (1985); *Baker v. Munro*, 71 Or.App. 164, 692 P.2d 126 (1984); *People ex rel. Anonymous v. Saratoga County Dept. of Social Services*, 55 Misc.2d 761, 286 N.Y.S.2d 697 (1968); *Pursley v. Hisch*, 119 Ind.App. 232, 85 N.E.2d 270 (1949); and *State v. Coliton*, 73 N.D. 582, 17 N.W.2d 546 (1945).

We agree with the above authorities and hold that I.C. § 7–1103, which defines "child born out of wedlock" as "a child who is begotten and born outside of lawful matrimony," refers to either a child born to an unmarried woman or a child born to a married woman but who was conceived by a man other than the mother's husband. This interpretation is consistent with the remaining sections contained in the Idaho Paternity Act.

The express language of I.C. § 7–1110 supports the conclusion that a putative father may bring a paternity action. I.C. § 7–1110 reads:

> **7–1110. Proceedings—By whom brought.**—Proceedings to establish the paternity of the child and to compel support under this act may be commenced by the mother, whether a minor or not, or by the child's guardian *or other person standing in a paternal relation* or being the next of kin of the child, or by the state of Idaho on behalf of a child for whom aid has been given. (Emphasis added.)

The statute specifically states that a "person standing in a paternal relation" to the child may bring a paternity action. In this

case, Joe Johnson is claiming to be Anneka's father, thus standing in a paternal relation to her. While Shelley disputes Joe's claim of paternity, one party in a paternity action will usually contest the claim of paternity; otherwise, there would be no reason to bring the action.[1] Since there is evidence to support Joe's claim that he is Anneka's father, thus standing in a paternal relation to her, he is authorized by I.C. § 7–1110 to bring this action.

I.C. § 7–1119 provides the means for rebutting the presumption of legitimacy. It states in full:

> **7–1119. Presumption of legitimacy— When rebutted.**—The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, show that the husband is not the father of the child.

This statute specifically provides that the tests provided for in the Paternity Act for determining paternity can be used to rebut the presumption of legitimacy by proving that a man other than the mother's husband is the father of the child. In order to prove his paternity, Joe must attempt to rebut the presumption of Anneka's legitimacy because Shelley was married when Anneka was born. I.C. § 7–1119 implicitly recognizes Joe's right to bring this action.

■ Our holding in *Burch v. Hearn*, 116 Idaho 956, 782 P.2d 1238 (1989), also implicitly recognized that a putative father could bring a paternity action pursuant to the Idaho Paternity Act, I.C. § 7–1101 *et seq.* In *Burch,* the magistrate dismissed a putative father's paternity action because the father had not first filed a notice of pater-

nity as required by I.C. § 16–1513(3).[2] We noted that "the interplay between [the] subparts of I.C. § 16–1513 displays a mechanism for dealing with paternity claims that emerge in the context of an adoption or termination proceeding." 116 Idaho at 957, 782 P.2d 1238. We then held that I.C. § 16–1513 "was never intended to prevent a father from voluntarily coming forward and, in the absence of an adoption or termination proceeding, filing an action under I.C. § 7–1011 *et seq.* to establish his rights and obligations with regard to the child without first having filed and registered the notice of claim to paternity required by I.C. § 16–1513(3)." 116 Idaho at 957–958, 782 P.2d 1238. This ruling implicitly acknowledged that a putative father may bring a paternity action pursuant to I.C. § 7–1110, even if adoption of the child or termination of parental rights is not at issue.

Respondent, however, argues that even if Joe Johnson may bring a paternity action under I.C. § 7–1110, under our decision in *Steve B.D., supra,* Joe has no standing to bring a paternity claim now because he neglected to establish a relationship with the child. We conclude, however, that *Steve B.D.* is inapplicable in this case. *Steve B.D.* was a claim of paternity in an adoption proceeding under I.C. § 16–1513, not a paternity action. Further, *Steve B.D.* involved a claim of violation of the due process clause of the fourteenth amendment, not a question of whether a putative father has a right to bring a paternity action under I.C. § 7–1110. The court had already terminated the parent-child relationship and was proceeding with the adoption when the alleged father sought to in-

---

1. I.C. § 7–1106 provides that a voluntary acknowledgement of paternity, executed by both parents, may be filed in lieu of contested paternity proceedings.

2. I.C. § 16–1513 provides in part:
 (1) A person who is the father or claims to be the father of a child born out-of-wedlock may claim rights pertaining to his paternity of the child by registering with the vital statistics unit of the department of health and welfare, a notice of his claim of paternity to the child born out-of-wedlock and his willingness and

intent to support the child to the best of his ability....
(3) Any father of such child who fails to file and register his notice of claim to paternity and to assume responsibility for the child shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child. Failure of such filing or registration shall constitute an abandonment of said child and shall be prima facie evidence of sufficient grounds to support termination of such father's parental rights in accordance with section 16–2005, Idaho Code.

tervene. The issue in the case was whether a rule which required a putative father to establish an immediate relationship with his child before he could intervene in the adoption proceedings was a denial of due process under the fourteenth amendment. The court in *Steve B.D.* held that the United States Constitution was not violated. In this case there is no constitutional question raised since I.C. § 7–1110 gives the father the right to bring such a proceeding, according to our decision in *Burch v. Hearn, supra.* I.C. § 7–1110.

 Furthermore, the Court in *Steve B.D.* held that "financial support in *any* form or amount is one means by which an unwed father can establish a significant relationship with his child." 112 Idaho at 26, 730 P.2d 942 (emphasis in original). Additionally, the Court stated, "Most significantly, during the time between his initial visits to the hospital and the day DeBernardi informed him of her surrendering the child, a period of some fifty-one days, Swan made no attempt to interact with the child." *Id.* In the present case, there is a substantial dispute in the evidence which, viewed most favorably to Johnson, the nonmoving party, indicated he had given financial support in several forms and substantial amounts. Furthermore, he had made attempts to interact with the child immediately after its birth, and was rebuffed by the mother. Accordingly, when the record is reviewed most favorably to Johnson, the facts in this case differ substantially from the facts which prompted this Court in *Steve B.D.* to conclude that Swan had failed to take sufficient action to establish his interest in the child.

Accordingly, we conclude that the substantial issues of fact precluded the issuance of summary judgment in this case, particularly in view of the fact that the trial court stayed Johnson's discovery requests in this matter pending its determination of the summary judgment motion. Further, the trial court erred in its legal conclusions with regard to the application of our decision in *Steve B.D.* to this case. Accordingly, we reverse the summary judgment entered by the trial court, vacate the order regarding attorney fees, and remand for further proceedings consistent with this opinion.

Costs to appellant. No attorney fees allowed.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.