# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52302

| | |
|---|---|
| OWEN BARTOSH,<br><br>    Petitioner-Appellant,<br><br>v.<br><br>ANGELIA FAITH CAMPBELL,<br><br>    Respondent-Respondent on<br>    Appeal.<br><br>STATE OF IDAHO, Department of<br>Health and Welfare, Child Support<br>Services (IDHW),<br><br>    Petitioner,<br><br>v.<br><br>DAMOND HALL and ANGELIA<br>FAITH CAMPBELL,<br><br>    Respondents. | Filed: February 21, 2025<br><br>Melanie Gagnepain, Clerk |

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. James D. Stow, Magistrate.

Judgment denying petition to establish paternity, custody, and child support, vacated; case remanded.

Amendola Doty & Brumley, PLLC; Julie L. Doty, Coeur d'Alene, for appellant. Thomas Knoebber argued.

Rakes Mediation & Family Law, PLLC; Matthew A. Rakes, Coeur d'Alene, for respondent. Matthew A. Rakes argued.

---

LORELLO, Judge

Owen Bartosh appeals from a judgment denying his petition to establish paternity, custody, and child support. For the reasons set forth below, we vacate the judgment and remand the case for further proceedings. Upon remand, this case is to be assigned to a different judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2019, Angelia Faith Campbell informed Bartosh that she was pregnant and that he might be the father. At the time, Campbell and Bartosh were minors living in Boise and Coeur d'Alene, respectively. Campbell was uncertain about the child's paternity because she had been in intimate relationships with both Bartosh and Damon Hall during the timeframe corresponding to the child's due date. Campbell gave birth to the child on September 1, 2019. At the time of the child's birth, Campbell was in a dating relationship with Hall, who was twenty-two years old. The day after the child was born, Campbell (who was still a minor) and Hall signed a voluntary acknowledgment of paternity (VAP), declaring Hall as the child's biological father and agreeing to list Hall's name on the child's birth certificate.

Despite agreeing that Hall should sign the child's birth certificate, in December 2019, Campbell told Bartosh that she believed he was the child's biological father. Later that month, Bartosh visited Campbell and the child. During this visit, Campbell informed Bartosh that she was in a dating relationship with Hall and that Hall was listed as the father on the child's birth certificate. A few weeks later, Bartosh again visited Campbell and the child and gave Campbell twenty dollars to help support the child. Bartosh was sixteen years old at that time.

In April 2020, the Idaho Department of Health and Welfare filed a petition for medical support against Campbell and Hall. In its petition, and based on the VAP, the Department listed Hall as the child's father. Campbell filed an answer to the petition, denying that Hall is the child's father. Neither Campbell nor Hall appeared at the trial on the Department's petition. Since Campbell failed to appear and her answer only denied paternity and did not address the subject of the Department's petition (the child's medical support), the Department moved to dismiss Campbell's answer. The magistrate court granted the Department's motion and ultimately entered a default judgment against both Campbell and Hall and issued an order requiring them to provide medical insurance for the child and cover their respective shares of certain child-related costs. That judgment was entered on January 4, 2021.

Sometime in 2021, Campbell's relationship with Hall ended. Around this same time, Campbell disclosed the child's existence to Bartosh's family. In the fall of 2022, Campbell and Bartosh reconnected. During this time, Bartosh twice travelled from Coeur d'Alene to Boise to visit Campbell and the child. By November 2022, Bartosh and Campbell were in a dating relationship. Bartosh claimed he began paying for the child's daycare, clothes, and other essentials. Additionally, because Bartosh was scheduled to leave for military training, he and Campbell planned for her and the child to visit Coeur d'Alene to meet Bartosh's family before he left. In December 2022, Campbell and the child visited Bartosh and his family. During this visit, Bartosh proposed marriage to Campbell. Before Bartosh departed, an at-home DNA test indicated Bartosh is the child's biological father.

Bartosh left for military training in January 2023. While Bartosh was away at training, Campbell developed a close friendship with Bartosh's mother. Eventually, in May 2023, Campbell and the child moved in with Bartosh's family.[1] Campbell's move resulted in the child bonding with Bartosh's mother. Bartosh returned home from military training in July 2023. In September 2023, Bartosh and Campbell ended their relationship. Campbell and the child subsequently moved out of the Bartosh's home, and Campbell denied both Bartosh and his mother access to the child.

In October 2023, Bartosh filed a petition to establish paternity, custody, and child support (paternity petition). Campbell answered and asserted paternity had already been established via the VAP and the medical support judgment. Formal DNA testing pursuant to a court order confirmed that Bartosh is the child's biological father. Thereafter, Bartosh filed a motion to rescind the VAP, alleging fraud and a material mistake of fact. Campbell objected to the motion and filed a motion for summary judgment regarding the child's paternity.[2] The magistrate court

---

[1]     Campbell "moved herself and the children into" Bartosh's mother's home. The record shows that Campbell gave birth to another child in 2022; that child is not involved in this case.

[2]     In November 2023, the magistrate court signed an order to consolidate the Department's action for medical support against Campbell and Hall with this case. With regard to this case, Hall was served with a summons in March 2024 but failed to appear. The Department filed a response indicating it did not intend on taking a position or otherwise participating in the proceedings. The Department also waived "its appearance at any hearing held in this matter."

held a hearing on the parties' motions and, after declining to hold an evidentiary hearing, heard oral arguments from both parties. Ultimately, the magistrate court found that the medical support judgment confirmed Hall's parental status and that Bartosh failed to establish either fraud or a material mistake of fact by clear and convincing evidence. Accordingly, the magistrate court issued a memorandum decision denying Bartosh's motion to rescind the VAP and concluded by inviting Campbell to file an amended motion for summary judgment, which she did.

In Campbell's amended motion, she asserted she was entitled to summary judgment because Bartosh failed to establish either fraud or a material mistake of fact with respect to the VAP. In response, Bartosh renewed his request for an evidentiary hearing, arguing the magistrate court was unable to make the relevant credibility determinations based on affidavits alone. In a separate case, Bartosh initiated an action to terminate Hall's parental rights on the grounds of abandonment. Bartosh also filed a motion to reconsider and a motion seeking relief from the medical support judgment under Idaho Rule of Family Law Procedure 805. The magistrate court held a hearing on the parties' motions and ultimately granted Campbell's amended motion for summary judgment and denied Bartosh's motion to reconsider. As to Bartosh's motion for relief from the medical support judgment, the magistrate court found it time-barred. Given these determinations, the magistrate court found there were no genuine issues of material fact and that, as a result, Campbell was entitled to judgment as a matter of law. Accordingly, the magistrate court awarded Campbell summary judgment and dismissed Bartosh's petition for paternity, custody, and child support.

Bartosh filed a second motion to reconsider in which he reiterated his contentions that the VAP and medical support judgment could not affect his substantive rights. The magistrate court denied Bartosh's second motion to reconsider. Thereafter, Bartosh sought permission to pursue an expedited appeal, which was granted. Bartosh appeals.

## II.

### STANDARD OF REVIEW

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). We also exercise free review in determining whether a genuine issue of material fact exists and whether the moving party

4

is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986).

## III.

## ANALYSIS

Bartosh raises several issues on appeal related to the magistrate court's decision to grant summary judgment in favor of Campbell with respect to his paternity petition. Bartosh also raises constitutional challenges relating to the statutes upon which the magistrate court relied in denying his paternity petition. We hold that the magistrate court erred in granting Campbell's amended motion for summary judgment. Because we resolve this case based on the magistrate court's summary judgment decision, we need not address Bartosh's constitutional claims.

### A. Idaho's Paternity Act

The procedural history of this case is somewhat complicated but, in our view, the answer to the central question with respect to Bartosh's paternity petition is straightforward and can be resolved pursuant to Idaho's Paternity Act. As suggested by its title, Bartosh's paternity petition sought to establish his paternity to the child conceived with Campbell. Bartosh's claim of paternity was predicated on an at-home test as well as information provided by Campbell. In addition, genetic testing was performed and the magistrate court ordered mediation to begin within thirty days from the results of genetic testing. Following the results of the genetic testing, it appears to be undisputed that Bartosh is the child's biological father. The only issue is whether Bartosh can take any action to establish his paternity.[3] He can and he did.

Idaho Code Section 7-1110 sets forth who can commence a proceeding to establish paternity of a child and includes a "person standing in a paternal relation" to the child. A person claiming to be the biological parent of a child has a "paternal relation" to the child. *See Johnson v. Studley-Preston*, 119 Idaho 1055, 1058-59, 812 P.2d 1216, 1219-20 (1991) (holding that the "person standing in a paternal relation" language of I.C. § 7-1110 includes one claiming to be a

---

[3] Bartosh's paternity petition also seeks court orders regarding custody and child support. It is unclear whether Campbell disputes Bartosh's ability to pursue custody and child support if paternity is established. To the extent she does, that question is resolved by I.C. § 7-1102, which provides that in a proceeding in which paternity is established, the trial court also has jurisdiction to order child support and determine custody.

child's father). Notwithstanding the statutory authority for Bartosh's paternity petition, the magistrate court granted summary judgment in favor of Campbell after concluding, as a matter of law, that Bartosh could not legally establish paternity because Hall signed the VAP. However, the existence of the VAP is irrelevant to Bartosh's ability to establish his own paternity.

Filing a VAP is one way to establish paternity in Idaho, but it is not the only way and does not preclude another individual from establishing paternity. A VAP, like a paternity petition, is authorized by Idaho's Paternity Act. I.C. § 7-1106. Section 7-1106(1) provides that a VAP is "admissible as evidence of paternity and shall constitute a legal finding of paternity upon the filing of a signed and notarized acknowledgment with the vital statistics unit of the department of health and welfare."[4] The purpose of a VAP is to allow for entry of an order for child support without requiring further proceedings to establish paternity. I.C. § 7-1106(3). Nothing in Idaho's Paternity Act supports a conclusion that the existence of a VAP precludes a paternity action by another person. *Cf. Johnson*, 119 Idaho at 1058-59, 812 P.2d at 1219-20 (providing no support in the Idaho Supreme Court's analysis of the Idaho Paternity Act for the proposition that a VAP acts as a bar against another person's paternity action). Nor does anything in the Paternity Act require rescission of a VAP as a prerequisite to filing a petition for paternity. Consequently, it was unnecessary for Bartosh to rescind the VAP in order to establish paternity, and the magistrate court

---

[4]     It is worth noting that the VAP provision of the Paternity Act, when read in conjunction with other provisions of the Act, contemplates that only a biological father would sign a VAP. The Act defines "father" as "the biological father of a child conceived or born out of wedlock." I.C. § 7-1103(4). The VAP provision provides that, if "the mother was married at the time of either conception or birth, or between conception and birth, and the husband is not the father of the child, the husband may file an executed and notarized affidavit of nonpaternity if it is accompanied by a voluntary acknowledgment of paternity." I.C. § 7-1106(1). In addition, I.C. § 7-1106(4) gives the director of the Department of Health and Welfare authority to "prescribe forms for the acknowledgment of paternity." The Department's public guidance document regarding VAPs states: "Paternity of a child may be established if the *natural* parents complete and file a voluntary acknowledgment of paternity. After paternity is established, the father's information may only be removed by a court of law. Do not sign the voluntary acknowledgment if you are uncertain of paternity of the child." Idaho Department of Health & Welfare, Division of Public Health, Bureau of Vital Records & Health Statistics, *How do I Add a Natural (Biological) Father to an Idaho Birth Certificate with a Voluntary Acknowledgement of Paternity?*, https://publicdocuments.dhw.idaho.gov/WebLink/ElectronicFile.aspx?docid=1296&dbid=0&repo=PUBLIC-DOCUMENTS, (last rev. May 2023) (emphasis added).

erred in determining that Bartosh's failure to establish grounds to rescind the VAP supported summary judgment in favor of Campbell.

**B.      Summary Judgment**

Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

In her amended motion for summary judgment, Campbell highlighted the magistrate court's denial of Bartosh's motion to rescind the VAP and argued Bartosh failed to meet his burden of establishing either fraud or material mistake of fact.[5] As a result, Campbell contended she was entitled to judgment as a matter of law. In response, Bartosh filed a motion to reconsider and a motion seeking relief from the medical support judgment under I.R.F.L.P. 805. In his motion to reconsider, Bartosh argued there were "six or seven reasons why summary judgment should be

---

[5]      Idaho Code Section 7-1106(2) provides for challenging an acknowledgement of paternity on the grounds of fraud, duress, or material mistake of fact.

denied . . . many of which are the same reasons the VAP should be rescinded": (1) the Paternity Act invades judicial power; (2) the Paternity Act violates due process; (3) the child was deprived of her constitutional right to a correct paternity determination; (4) fraud; (5) mistake of fact; and (6) "limitation on legal parents; termination of parental rights." After a hearing on the parties' motions, the magistrate court denied Bartosh's motion to reconsider, found the motion for relief from the medical support judgment time-barred, and granted summary judgment in favor of Campbell.

The magistrate court identified the central issue of this case as whether Bartosh "has a parental right to enforce" and concluded, based on the facts and its findings, that he did not. According to the magistrate court, the Paternity Act was constitutional, did not "invade the judicial power of the" court, and did not "violate due process as argued." Further, the magistrate court found the Paternity Act was constitutional (specifically I.C. § 7-1106) both facially and as applied in this case. The magistrate court also found that Bartosh did not establish standing to assert "a constitutional right as alleged on behalf of the child." Even if Bartosh satisfied the criteria for third-party standing, the magistrate court determined that "such a right of a child to a paternity determination is not recognized under Idaho law." The magistrate court also reaffirmed its prior determinations on fraud and material mistake of fact related to the VAP. As to the motion for relief from the medical support judgment, the magistrate court indicated that the judgment confirms "Hall's parental status as to the child." The magistrate court, therefore, denied Bartosh's motion for relief and explained its reasoning as follows:

> As to the motion for relief from judgment, I would find that it is time-barred, that there is an insufficient showing of fraud or mistake, the same theories and legal principles as already determined related to the motion for reconsideration and the original motion, and further insufficient showing of the exercise of diligence in reference to any mistake by Mr. Bartosh or inadvertence or excusable neglect.

Given these determinations, the magistrate court found there were no genuine issues of material fact and that Campbell was entitled to judgment as a matter of law.

On appeal, Bartosh argues Campbell was not entitled to judgment as a matter of law and that the magistrate court erred in granting her summary judgment. Specifically, Bartosh asserts the magistrate court erred when it found that he did not have parental rights to enforce. Bartosh further asserts the VAP does not prevent him from establishing his paternity "because it affects

8

only the rights of the people who signed it." Additionally, Bartosh contends the medical support judgment does not "prevent [him] from establishing his paternity because it did not adjudicate paternity, but if it did, it does not have preclusive effect." We address each of Bartosh's arguments in turn.

### 1.     Standing--Bartosh's parental rights

Bartosh asserts that I.C. § 7-1110 gives him standing to file a paternity case and that the magistrate court made inconsistent findings with respect to standing. Specifically, Bartosh highlights that, in the memorandum decision denying Bartosh's motion to rescind the VAP, the magistrate court indicated Bartosh had statutory standing to pursue the paternity case pursuant to I.C. § 7-1110. However, in ruling on Bartosh's motion to reconsider, the magistrate court reached the opposite conclusion, finding that Bartosh did not have "parental rights to enforce . . . on the record before" it. Bartosh contends the magistrate court was correct in its first determination. Campbell responds that Bartosh's argument "misstates and misunderstands the decisions" of the magistrate court. According to Campbell, the magistrate court's finding that Bartosh has no parental rights to enforce pertained only to the narrow issue of whether, under Idaho law, a child may have "more than one father." Thus, Campbell asserts there is "no actual dispute here as Bartosh claims he had standing to pursue this action and the [magistrate] court agreed." We agree with Campbell.

A review of the transcript shows that the magistrate court's finding that Bartosh lacked standing related to whether he had standing to assert a right on behalf of the child. Specifically, the magistrate court found that Bartosh "does not have standing to assert constitutional--a constitutional right as alleged on behalf of the child and such right of a child to a paternity determination is not recognized under Idaho law."

Thereafter, Bartosh sought clarification on the magistrate court's "comments on the more-than-one-parent issue." The magistrate court explained:

> Effectively, that as to the more-than-one-parent issue, I suppose it's a bit of a dodge, in that I don't think Idaho law has addressed that. So maybe just to clarify that a little bit more, I don't think that that is clear that concept in Idaho law, so I would not be inclined to recognize that under the circumstances of this case. However, more importantly, and really my comment was, that I agreed with the analysis of [Campbell's trial counsel] that really the underlying issue is whether

9

Mr. Bartosh has a parental right to enforce, and under the facts, circumstances, and findings of this case, I would find that he does not.

The magistrate court concluded that, because Idaho law does not recognize a child's right to an accurate paternity determination (as Bartosh argued), Bartosh did not have standing to assert the alleged right on behalf of the child. However, this finding does not alter the magistrate court's prior determination that Bartosh "has initial standing to bring this action." Indeed, in its memorandum decision denying Bartosh's motion to rescind the VAP, the magistrate court determined Bartosh had statutory standing to file his petition to establish paternity under I.C. § 7-1110. Further, because Bartosh presented evidence to support his claim of paternity, the magistrate court found that he made a sufficient showing of standing in a paternal relation pursuant to *Johnson*, 119 Idaho at 1059, 812 P.2d at 1220. Accordingly, the magistrate court's finding that Bartosh has standing to file his petition is supported by the record.

### 2. Preclusive effect of the VAP

On appeal, Bartosh cites two Idaho cases explaining VAPs and emphasizes that neither address whether a VAP precludes a biological father's paternity claim. *See Hamberlin v. Bradford*, 165 Idaho 947, 952, 454 P.3d 589, 594 (2019); *Gordon v. Hedrick*, 159 Idaho 604, 610, 364 P.3d 951, 957 (2015). While Bartosh agrees with the Idaho Supreme Court's comment in *Hamberlin*, at 952, 454 P.3d at 594, that a VAP constitutes a legal finding akin to a judgment for purposes of rescission, he contends "a VAP is not generally analogous to a judgment, and it is not actually a judgment; it is only a finding." Bartosh argues this finding alone does not carry preclusive effect because the doctrine of res judicata applies only when a trial court issues a final judgment on the merits. Bartosh further asserts that "it might be true that a VAP can establish a child's paternity, but only as between the parties who signed it." In response, Campbell argues "this is not an issue of res judicata" and contends that the VAP affects more than just its signatories. Specifically, Campbell asserts the VAP applies "broadly to all others" and that, while "Bartosh had standing to bring his claims, [he] failed to meet his burden of proof." We agree with Bartosh.

Res judicata prevents the litigation of causes of action which were finally decided in a previous suit. *Gubler By and Through Gubler v. Brydon*, 125 Idaho 107, 110, 867 P.2d 981, 984 (1994). As a general proposition, res judicata prevents litigants who were parties in a prior action and those in privity with them from bringing or having to defend a claim arising from the

10

transaction or series of transactions giving rise to the first suit. *Id*. The review of a trial court's ruling on whether an action is barred by res judicata is a question of law this Court freely reviews. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.2d 613, 616 (2007).

In this case, Bartosh was not a party to Campbell and Hall's decision to sign the VAP, nor was he in privity with them. Additionally, as noted, nothing in Idaho's Paternity Act supports a conclusion that the existence of a VAP precludes a paternity action by another person. *Cf. Johnson*, 119 Idaho at 1058-59, 812 P.2d at 121-20 (providing no support in the Idaho Supreme Court's analysis of the Idaho Paternity Act for the proposition that a VAP acts as a bar against another person's paternity action). As such, Bartosh's paternity petition is not barred by res judicata. Additionally, as Bartosh points out, this proposition of law finds support in other jurisdictions. *See Wilson v. Cramer*, 317 S.W.3d 206, 210-11 (Mo. Ct. App. 2010) (holding that, under the applicable statutes, an acknowledgment of paternity, without more, cannot deprive a putative father of standing to file a paternity action when the father was not privy to the acknowledgment); *Dwayne J.B. v. Santos H.*, 932 N.Y.S.2d 378, 378 (N.Y. App. Div. 2011) (holding that a prior acknowledgment of paternity does not serve as an insuperable bar to a claim of paternity by one who is a stranger to the acknowledgment).

Finally, we also agree with Bartosh that both *Hamberlin* and *Gordon* are distinguishable from this case. In both cases, the parties seeking to rescind and nullify the legal consequences of the VAP were signatories to the VAP. *Hamberlin*, 165 Idaho at 950, 454 P.3d at 592; *Gordon*, 159 Idaho at 608, 364 P.3d at 955. In contrast, Bartosh did not sign or otherwise participate in executing the VAP in this case. Accordingly, *Hamberlin* and *Gordon* are distinguishable from the facts of this case, and Bartosh was not required to challenge the VAP in order to file his paternity petition.

### 3. Preclusive effect and adjudicative nature of the medical support judgment

In its memorandum decision, the magistrate court noted that a medical support judgment requiring Hall to provide medical support for the child was entered in January 2021 and was consolidated with this case. The fifth paragraph of the medical support judgment provides that "Damon Hall is the father of the [the child], born on xx/xx/2019." The medical support judgment names Hall and Campbell as respondents and outlines their respective responsibilities for the child's medical support needs and related obligations to each other. The medical support judgment

11

does not mention Bartosh, nor does it place any responsibilities on him relating to the child's medical support. In its memorandum decision denying Bartosh's motion to rescind the VAP, the magistrate court determined that the medical support judgment confirmed Hall's parental status as to the child.

On appeal, Bartosh contends the medical support judgment does not establish Hall's paternity, but if it does, it does not preclude Bartosh from establishing his paternity. According to Bartosh, judgments sometimes contain preliminary recitals that do not directly adjudicate the subject matter of the controversy or determine the parties' rights, but, instead, recite background facts. Bartosh argues "the provision at issue here is such a recital." Bartosh contends paragraph five of the medical support judgment is not among the operative portions of the judgment, does not adjudicate the subject matter of the case, and does not determine the legal rights of the parties. Campbell responds by arguing paragraph five of the medical support judgment "serves not as a mere recital, but the entire basis for the [magistrate] court to exercise authority over the putative father." We agree with Bartosh that the medical support judgment does not have preclusive effect as to him.

Res judicata "is comprised of claim preclusion (true res judicata) and issue preclusion (collateral estoppel)." *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Under the principles of claim preclusion, "a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Id*. Claim preclusion bars not only subsequent relitigation of a previously asserted claim, "but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." *Id*. Issue preclusion, on the other hand, "protects litigants from having to litigate an identical issue" with the same party or its privy. *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618. The Idaho Supreme Court has set forth a five-element test for issue preclusion:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id*.

We begin by noting that the purpose of the medical support judgment was to ensure the child's medical needs were met by Hall and Campbell. While the medical support judgment names Hall and Campbell as the child's parents, Bartosh is not listed in the judgment as a party or in any other capacity. The Department served a summons upon Hall and Campbell regarding its petition for medical support, to which only Campbell answered.[6] Notably, in her answer, Campbell denied the Department's allegation that Hall is the child's father. At a subsequent hearing, the Department noted that the petition was for the sole purpose of establishing medical support for the child. At trial on the petition, the Department moved for dismissal of Campbell's answer, which the district court granted. After dismissing Campbell's answer, the magistrate court entered default against Campbell and judgment was entered thereafter. As such, the medical support judgment does not preclude Bartosh's paternity petition because, at a minimum, the party against whom preclusion is asserted (Bartosh) was not a party, or in privity with a party, to the medical support case. Additionally, Bartosh derived no interest in the medical support case from any of the parties involved, nor did he have a full and fair opportunity to litigate the child's paternity. Accordingly, Bartosh's paternity was not adjudicated by the medical support judgment.

Further, while Idaho's appellate courts have not confronted this question directly, authorities from other states support Bartosh's position that "a paternity judgment does not have preclusive effect on a person who was not a party, and not in privity with a party, to the case." *See*, *e.g.*, *Stitham v. Henderson*, 768 A.2d 598, 601 (Me. 2001) (allowing a biological father's paternity action to proceed, despite an earlier judgment adjudicating the child's paternity, because the earlier judgment was issued in a case not involving the biological father); *Broxterman v. Broxterman*, 656 N.E.2d 394, 397 (Ohio 1995) (concluding that the child was not in privity with its mother in a previous divorce case that determined the child's paternity; thus, res judicata could not be invoked to bar the child, or his legal custodians, from pursuing a subsequent paternity action against the true father). Additionally, because we hold that Bartosh was not required to challenge either the VAP or the medical support judgment as a prerequisite to filing his paternity petition, we reject Campbell's argument that Bartosh's paternity petition should be denied because he failed

---

[6] The Department filed a notice of intent to default after Hall failed to file an answer or a response to the petition for medical support. In August 2020, the magistrate court entered default against Hall.

13

to show that the VAP was entered erroneously due to fraud, duress, or a material mistake of fact and/or that the medical support judgment should be set aside.

Bartosh also cites *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 n.4 (1996) for the proposition that a court cannot, without disregarding the requirement of due process, give conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein. Bartosh asserts that, "by analogy, this principle must also apply to the VAP if the VAP acts as a judgment determining the child's paternity." In response, Campbell asserts Bartosh's arguments are baseless because he "was barred by neither res judicata nor collateral estoppel from pursuing his claims." Despite Campbell's assertion that the principle of res judicata is not at issue, her arguments essentially ask this Court to give preclusive effect to both the VAP and the medical support judgment. We decline to do so.

Assuming the parties do not dispute that Bartosh can establish paternity because he is the biological father of the child, there is no genuine issue with respect to that material fact. However, there remains genuine issues of material fact governing Bartosh's request for custody and child support. Accordingly, we vacate the magistrate court's judgment and order granting summary judgment in favor of Campbell and remand this case for further proceedings consistent with this opinion.

## C. Reassignment Upon Remand

Idaho appellate courts have the discretion to assign a case to a different judge upon remand. *See Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, 358, 483 P.3d 396, 415 (2021). However, neither the Supreme Court nor this Court have set forth any particular criteria to consider in determining whether a case should be reassigned after a remand. The bases for remanding to a different judge range from finding multiple trial-level errors to the appearance of bias. *See*, *e.g.*, *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 793, 526 P.3d 650, 664 (2023) (requiring reassignment to a new judge on remand due to appearance of bias based on judge's comments to counsel); *Secol*, 168 Idaho at 358, 483 P.3d at 415 (requiring a new district judge to be assigned on remand after listing errors made by the district court that created impression of bias, including denial of a motion for new trial based on court's improper questioning of a witness, permitting improper expert witness testimony, admitting irrelevant testimony, and erroneously instructing the jury); *Hepworth Holzer, LLP v. Fourth Jud. Dist. of State*, 169 Idaho 387, 400, 496 P.3d 873, 886

(2021) (making "no finding that the district court [was] biased," but "to avoid even the appearance of impropriety," ordering "the administrative district judge assign a new judge to this case upon remand" and limiting the holding "to the unique facts presented" in the case). Criteria considered by some federal courts in determining whether to require reassignment includes: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *See Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1111-12 (9th Cir. 2013); *Cintron v. Union Pac. R.R. Co.*, 813 F.2d 917, 921 (9th Cir. 1987); *Davis & Cox v. Summa Corp.*, 751 F.2d 15107, 1523 (9th Cir. 1985). The first two factors are equally important and a finding of either is sufficient to support reassignment on remand. *Krechman*, 723 F.3d at 1112.

Bartosh asks this Court to reassign this case to a different magistrate judge upon remand. Campbell responds that "nothing in the record nor argued by Bartosh, beyond a mere possibility," supports the idea that the magistrate judge would have difficulty setting aside its prior findings and credibility determinations. For the following reasons, we conclude it is appropriate to reassign this case to a different magistrate judge on remand.

To begin, this Court echoes Bartosh's position that this reassignment "should not be interpreted as an attack on [the magistrate judge's] integrity" and is not made as a criticism of character or professionalism. Instead, our decision to reassign this case reflects the understanding that "a judge who has made credibility determinations and expressed certain views on the merits of a case prior to appeal may find it difficult to remain impartial upon remand." Specifically, the magistrate judge's finding that Bartosh "did not act reasonably in failing to assert his paternity in any legally meaningful way until . . . the child was four years old," could make it difficult to set aside previously expressed views we now reject. Similarly, asking the magistrate judge to disregard prior credibility determinations favoring Campbell's written testimony over Bartosh's and finding his claims not credible might also pose a reasonable challenge. Additionally, because the focus of this case will shift to the merits of Bartosh's paternity petition on remand, which does not present complex issues and will not require significant effort from a new judge, reassignment

15

of this case would not result in disproportionate waste or duplication of effort. While Campbell is correct that this case has spanned several years and involved numerous motions and claims raised before the magistrate court, the effort reassignment will entail does not outweigh the gain in preserving the appearance of fairness.

Thus, in the interest of preserving the appearance of impartiality and maintaining the integrity of the judicial process, we conclude that this case warrants reassignment on remand. Accordingly, we remand for further proceedings in front of a different magistrate judge.

## IV.

## CONCLUSION

Campbell was not entitled to summary judgment in relation to Bartosh's paternity petition. As such, we vacate the magistrate court's judgment granting summary judgment in Campbell's favor and remand this case for further proceedings consistent with this opinion. On remand, this case is to be reassigned to a different magistrate judge. Costs, but not attorney fees, on appeal are awarded to Bartosh as the prevailing party.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.